CITY OF BELLAIRE, EX REL. SEDGWICK, ETC., *v.* BEL-
LAIRE, BENWOOD & WHEELING FERRY CO.

*Municipal corporations — Ferry rates on Ohio river — Ordinance
rates from opposite shore invalid — Reduced fares valid, when
— Workhand and shopping tickets.*

1. An Ohio municipality cannot by ordinance fix the rate of fare
   for ferriage from the West Virginia side of the Ohio river
   to the Ohio side, and an ordinance of the city of Bellaire, Ohio,
   fixing the rate of ferriage fare from Wheeling and other points
   on the West Virginia side of the river to Bellaire and other
   points on the Ohio side, is void.

2. An ordinance fixing the price of "workhand" tickets at a lower
   rate than that charged for ordinary fares having been con-
   strued by the ferry company to apply to all persons alike, and
   not simply to a class, will not be held void as a discrimination
   in favor of a class, but the construction put upon it by the
   company will be adopted by the court.

(Decided May 15, 1920.)

APPEAL:    Court of Appeals for Belmont county.

*Mr. C. C. Sedgwick,* city solicitor, for plaintiff.

*Messrs. Heinlein, Spriggs & James,* for de-
fendant.

METCALFE, J. (orally).    The city of Bellaire is
an Ohio municipal corporation and the defendant
company is a West Virginia corporation engaged in
the business of ferrying passengers and freight
across the Ohio river.    The action was brought in
injunction by the city of Bellaire, on relation of C.
C. Sedgwick, its solicitor, to restrain the defendant
from charging certain rates of fare for carrying
passengers and freight from the city of Bellaire, in
Ohio, across the river to Benwood and Wheeling,

West Virginia, and prohibiting said company from charging any rates except certain ones fixed by an ordinance of the city of Bellaire, passed in 1873 and amended in 1878.

Section 4 of that ordinance provides that "The ferrymen shall be entitled to charge the following compensation each way, namely  *  *  *." A list of charges follows, which is concluded by the clause, "Workhand and shopping tickets, 12 for thirty cents." It is claimed that Section 4 of the ordinance is void for the reason that it fixes the fare both ways, and in that respect exceeds the power of an Ohio municipality to legislate. It is further claimed that the clause in the ordinance fixing the fare for workhand and shopping tickets is an illegal discrimination in favor of certain classes against all other classes. So these are the questions before this court at this time: First, whether or not the section of the ordinance fixing the rate of charges for ferriage across the Ohio river, from the West Virginia side to the Ohio side, is illegal; and, second, whether the so-called workhand and shopping ticket clause is a discrimination in favor of certain classes to the exclusion of others.

The right of a state bordering upon the Ohio river to legislate within reasonable bounds for the regulation of ferries and to provide against excessive charges is no doubt a proper exercise of legislative authority. *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S., 196; *Gibbons* v. *Ogden,* 9 Wheat. (22 U. S.), 1; *Wiggins Ferry Co.* v. *East St. Louis,* 107 U. S., 365; *Fanning* v. *Gregorie,* 16 How. (57 U. S.), 524, and *Chosen Freeholders of Hudson Co.* v. *State,* 24 N. J. Law, 718.

But can one state legislate the charge from another state on the opposite shore to its own shore? The right of a state on either side of the river to make necessary and proper legislation for the government of ferries must be exclusive, but exclusive only so far as the legislation is local. The legislation of one state cannot extend to and operate within the jurisdiction of another state having equal powers. West Virginia and Ohio have equal powers so far as the regulation of ferries is concerned, but neither can legislate for the other. If the power to fix the charge to West Virginia from Ohio exists, it is in the Ohio authorities, and, conversely, the power to fix the charge from West Virginia to Ohio is exclusive within the West Virginia jurisdiction, and any attempt by either to legislate the charge from the other side is extra-territorial and therefore void.

But it is urged that as West Virginia and Ohio have concurrent jurisdiction over the river, either may legislate upon a subject within the concurrent jurisdiction. That the two states might by concurrent action establish rates of charges both ways is not doubted, but such concurrent jurisdiction as the states have over the Ohio river is over the waters of the river, as they extend from shore to shore, and does not operate beyond the shore. Legislation by a state relating to navigation upon the river is one thing, regulation of the charge from shore to shore is entirely another. The fare has nothing to do with the conduct of the boats while on the river.

We are not called upon to decide in this case whether legislation by one state relating to the method of conducting navigation upon the waters

of a river is valid. This case appears to us to rest upon a very different foundation. But the right to regulate navigation operates only where the concurrent jurisdiction confessedly exists, and cannot operate upon the opposite shores of a river. Just what is meant by concurrent jurisdiction has not been made entirely clear by the authorities, but it is held to relate to things on the water and not to attach to the soil or extend beyond the boundary lines of the state. *Henderson Bridge Co.* v. *Henderson City,* 173 U. S., 529; *Mississippi & Missouri Rd. Co.* v. *Ward,* 67 U. S. (2 Black), 485; *Commonwealth* v. *Garner,* 44 Va. (3 Grattan), 655; *Roberts* v. *Fullerton,* 117 Wis., 222; *State* v. *Faudre,* 54 W. Va., 122, 102 Am. St. Rep., 927.

In the latter case the very question involved in this case was before the supreme court of West Virginia. The court held that a law of West Virginia regulating ferry charges across the Ohio river did not apply to an Ohio ferry company carrying passengers from the Ohio side. This is the exact case here except that in this case an Ohio municipality by ordinance attempts to legislate the fare from the West Virginia side. In the case of *City of Sault Ste. Marie* v. *International Transit Co.,* 234 U. S., 333, the supreme court of the United States held that a state cannot make commercial intercourse with another state or foreign country a matter of local privilege, and held invalid an ordinance of the city of Sault Ste. Marie, Michigan, requiring a license from boats of British registry operating ferries across the river to the Canadian shore.

The right to establish and regulate ferries on boundary streams is unquestionably within the power of the states. *Gibbons* v. *Ogden,* 9 Wheat. (22 U. S.), 1.

Granted the right of a state to establish and regulate ferries operating on waters over which it has concurrent jurisdiction with other states on the opposite shore, can such legislation extend over objects upon which other states have an equal right to legislate, so as to prevent such other states in the exercise of their undoubted right from legislating on the same subject; can it extend to and control the fare from the opposite shore, over which it has no jurisdiction?

If Ohio can control the fare charged by a West Virginia company from Wheeling to Bellaire, then it would follow also that West Virginia could regulate the fare charged from Bellaire to Wheeling. Both states cannot control the same thing by legislation differing in method and imposing different obligations relating to the same act.

We, therefore, conclude that the concurrent jurisdiction over the waters of the Ohio river does not permit one state to legislate regarding fares from the shore of the state on the opposite side of the river. It is the right of each state to impose reasonable regulations within its own boundaries, but it cannot impose those regulations upon another state where such other state has an equal right to legislate upon the same subject.

It is urged also that the provision of Section 4 requiring the sale of "workhand" and "shopping" tickets at the rate of 12 for thirty cents is void for

the same reason, and for the further reason that it discriminates in favor of certain classes to the exclusion of all other classes. These tickets evidently could be used both ways. They could also be used exclusively for the fare from Ohio to West Virginia, but can the ferry company be compelled to accept them from the West Virginia side to the Ohio side? Evidently, so far as this clause of the ordinance provides for fares from the other side of the river to the Ohio side, it is open to the same objection as the other provisions of the ordinance. We do not think, however, that this provision is necessarily void as a discrimination in favor of a class. The construction which the company has put upon it has made these tickets available to all persons alike, who desire to use them, without any discrimination, and where a class of tickets providing for a lower rate of fare is available to the public in general and is not confined to a particular class it is held not to be an unlawful discrimination. *Larrison* v. *Chicago & Grand Trunk Rd. Co.,* 1 I. C. C., 369; *Smith* v. *Northern Pacific Rd. Co.,* 1 I. C. C., 611; *In re Passenger Tariffs,* 2 I. C. C., 445; *Interstate Commerce Com.* v. *B. & O. Rd. Co.,* 145 U. S., 263.

While the construction put upon the clause in the ordinance by the company is not binding on the court, yet, as that construction relieves the clause from the objection of being a discrimination, we think it should be followed. *State, ex rel. Gallinger,* v. *Smith, Auditor,* 71 Ohio St., 13; *Dutoit* v. *Doyle,* 16 Ohio St., 400, and *State, ex rel. Belford,* v. *Hueston,* 44 Ohio St., 1.

Our conclusion is that Section 4 of the ordinance, in so far as it fixes the rate of fare from the West Virginia shore, is void, but that the clause relating to workhand and shopping tickets is not void as being a discrimination in favor of a class.

*Judgment for defendant.*

FARR and POLLOCK, JJ., concur.