STATE ET AL. *v.* HUMAN ET AL.

(Nos. 77 TR C 414 ET AL.—Decided March 15, 1978.)

Crawford County Municipal Court.

*Mr. Dustin Redmond,* assistant county prosecutor, for plaintiff, State of Ohio.

*Mr. James Hoover,* assistant city prosecutor, for plaintiffs Galion and Crestline.

*Messrs. Petri, Hottenroth, Garverick & Tilson Co. L. P. A.* and *Mr. Stephen Tilson,* for defendants Human, Shoenfelt, Jarrell, Shannon and Walters.

*Messrs. Laughbaum & Eckstein* and *Mr. Steven D. Eckstein,* for other defendants.

BENDER, J. The above-named defendants through counsel filed motions to dismiss in the Crawford County Municipal Court on the basis that this court lacks jurisdiction to try their cases. Since all motions involved the same facts and questions of law, all motions were consolidated. Briefs were submitted and the motions were orally argued on the 24th of February, 1978.

The facts are not in dispute. Prior to January 1, 1978, there existed in Crawford County, Ohio, mayor's courts in the municipalities of Bucyrus and Galion, and two county courts (Eastern and Western Districts) with limited statutory jurisdiction outside of the incorporated municipalities in Crawford County. As a result of the repeal of Ohio Revised Code Sections 1901.01, 1901.02, 1901.021, 1901.03, 1901.31, 1901.34, 1901.36, 1905.01, and 5503.04 and the substitution therefore of new sections of the same numerical designation effective January 1, 1978, there came into existence the Crawford County Municipal Court with county-wide jurisdiction, including the municipalities of Bucyrus and Galion. As a result of these new statutes, the mayor's courts of Bucyrus and Galion and the county courts ceased to exist, as of January 1, 1978. R. C. 1901.04.

Misdemeanor complaints alleging offenses committed in 1977 against all named defendants except defendants Pickard and Cabell were filed and summons issued in either the mayor's courts of Bucyrus or Galion, or the county courts during the last quarter of 1977 and were pending resolution in those courts as of December 31, 1977, when those courts statutorily expired.* In accordance with R. C. 1901.04, all pending cases in the mayor's courts of Bucyrus and Galion and the two county courts including those of the defendants, except defendants Pickard and Cabell, were transferred by the respective mayor's and county court judges to the new Crawford County Municipal Court as of January 1, 1978. In the case of defendants Pickard and Cabell, misdemeanor complaints alleging offenses occurring in December 1977, were originally filed and summons issued in the Crawford County Municipal Court after January 1, 1978.

Defendants' arguments to support their motions to dismiss are basically as follows:

1. That a municipal court is statutorily created and therefore its jurisdiction is strictly limited by the statutes which create it. Since the Crawford County Municipal Court did not exist prior to January 1, 1978, it has no jurisdiction over offenses that occurred within its territorial jurisdiction prior to that date in the absence of an express statutory grant. *State* v. *Veal* (1977), 51 Ohio Misc. 61.

2. That R. C. 1901.04 is not such an express statutory grant of jurisdiction since it does not specifically mention the Crawford County Municipal Court, and therefore cannot give this court "retroactive jurisdiction" over offenses arising before the inception date of the municipal court.

3. That since the Crawford County Municipal Court and the mayor's and county courts never existed at the same point in time any proported transfer of pending cases is a

---

*Certain defendants' cases had originally been filed in Crestline Mayor's Court, which still exists, and transferred to the Eastern District County Court because defendants had entered not guilty pleas and demanded jury trials. Those cases were then pending in the Eastern District Court when they were transferred as of January 1, 1978 to the new Crawford County Municipal Court.

**8**

nullity since the transfer necessarily had to take place at a point in time when either the transferee or transferor court did not exist. *Coyne* v. *State* (1926), 22 Ohio App. 462.

Counsel for the state and the municipalities involved rely on R. C. 1901.04 as clear statutory authority for the jurisdiction of this court to adjudicate defendants' cases although counsel for the municipalities involved concedes the point that if a defendant's case was not properly filed with the then existing county or mayor's court before January 1, 1978, and transferred under the provisions of R. C. 1901.04, there would be no jurisdiction in this Court to adjudicate it. This concession has relevance only as to defendants Pickard and Cabell.

*DECISION OF THE COURT.*

Under the provisions of Section 1, Article IV of the Ohio Constitution, the judicial power of this state is vested in a Supreme Court, Courts of Appeals, Courts of Common Pleas and divisions thereof, and "such other courts inferior to the Supreme Court as may from time to time be established by law." Section 15, Article IV of the Ohio Constitution specifically provides in part, that "Laws may be passed * * * to establish other courts, whenever two-thirds of the members elected to each house shall concur therein." The legislature has seen fit to establish in Crawford County, a municipal court effective January 1, 1978. R. C. 1901.01 *et seq.* The question for determination is what is the nature and extent of its jurisdiction.

Without question, a court that is statutorily created has no jurisdiction except that granted by statute. There is no inherent jurisdiction in a municipal court. *G. A. Schadt Motor Truck Co.* v. *Dengenhart* (1917), 10 Ohio App. 100; *Soul* v. *Lockhart* (1928), 119 Ohio St. 393, 164 N. E. 419; *State, ex rel. Foreman,* v. *Bellefontaine Municipal Court* (1967), 12 Ohio St. 2d 26, 231 N. E. 2d 70. The extent of the criminal jurisdiction of a municipal court is specified in R. C. 1901.20 which provides, in part, "[t]he municipal court has jurisdiction of the violation of any ordinance of any municipal corporation within its territory and of any misdemeanor committed within the limits of its territory."

In addition, R. C. 1901.04 provides in part that "[u]pon

the institution of a municipal court, all causes, judgments, executions, and proceedings, then pending in courts of mayors, police justices, and county courts within the territory as to which their jurisdiction is terminated shall proceed in the municipal court as if originally instituted therein. The parties may make such amendments to their pleadings as are required to conform to the rules of the municipal court."

It is clear that the legislature in enacting R. C. 1901.04 did not intend that when a new municipal court is created which replaces mayor's courts and county courts the cases pending in those courts simply evaporate into thin air and the criminal justice system on the misdemeanor level starts afresh within the territory of the new court. Rather this statute clearly provides that newly created municipal courts which take the place of mayor's courts and county courts assume jurisdiction over then pending cases in those courts without the necessity of dismissing those pending cases and refiling them in the new court or if jurisdiction lies, in the common pleas court. Defendant's contention that for R. C. 1901.04 to be effective it must specifically mention by name newly created courts is wholly without merit.

It should be noted at this point that the practice of transferring pending cases from courts statutorily abolished to courts newly created is not a new one. In *Roads* v. *Symmes* (1824), 1 Ohio 281, a case involving the validity of title to real estate, the Supreme Court, at page 317, noted with favor the transferring of pending cases from an abolished court to a new court. In this particular case, the legislature had abolished the General Court and transferred cases to the newly created Supreme Court of Hamilton County. See, also, *Van Buskirk* v. *Newark* (1875), 26 Ohio St. 37.

Defendants, however, rely heavily on the case of *State* v. *Veal, supra*, to sustain their position. *Veal* is not applicable. *Veal* dealt with a wholly different fact situation. In that case a misdemeanor complaint against Veal alleging an offense occurring on December 31, 1976, was filed with the Medina Municipal Court on January 3, 1977. As of

January 1, 1977, the territory in which the offense occurred was under the jurisdiction of the Wadsworth Municipal Court. The Medina Court, noting this, transferred the case to the Wadsworth Court, since Medina was then without jurisdiction. The Wadsworth Court dismissed the case finding it had no jurisdiction over offenses occurring before the inception date of the court because the court had been granted no specific statutory jurisdiction over cases arising before its inception date. The major difference between the *Veal* case and defendants' cases here is the applicability of R. C. 1901.04 which does grant this court specific jurisdiction of defendants' cases. R. C. 1901.04 was not applicable in *Veal* because the transfer from the Medina Municipal Court to the Wadsworth Municipal Court was not a transfer of cases from then extinct mayor's or county courts. Further, *Veal* dealt with the problem of territorial jurisdiction which is not the situation here.

Defendants' position that this court can have no jurisdiction over offenses arising before the inception date of the court absent an express statutory grant carries more weight in the circumstances of defendants Pickard's and Cabell's cases. Since those cases were originally filed in the Crawford County Municipal Court after January 1, 1978 and not transferred under the provisions of R. C. 1901.04, that statute has no application and this court must look elsewhere to determine if there is any authority on which to retain jurisdiction.

The question becomes what is the definition and nature of the word "jurisdiction." It goes without saying that there are various types of jurisdiction, such as criminal and civil and subject matter and territorial. Further, it must be noted that criminal jurisdiction is statutory and must be strictly construed whether one is dealing with a court of general jurisdiction or a court of limited jurisdiction. Section 18, Article IV, Ohio Constitution, *Ex parte Steinmetz* (1930), 35 Ohio App. 491, 172 N. E. 623; *Stevens v. State* (1854), 3 Ohio St. 453; *State, ex rel. Miller, v. Keefe* (1958), 168 Ohio St. 234.

This court has diligently sought an appropriate definition of the word "jurisdiction" and it appears the most ap-

plicable statement is found in the case of *Sheldon* v. *Newton* (1854), 3 Ohio St. 494, which has been often cited through the years. In *Sheldon* the court stated that "[t]he power [of a court] to hear and determine a cause is jurisdiction; and it is coram judice whenever a case is presented, which brings this power into action." If this be the proper definition, when does the cause arise which gives the court jurisdiction? Is it determined by the date of the alleged offense or the date when the power of the court is invoked such as the filing of a complaint? It is the opinion of this court that no cause or case arises involving jurisdiction of a court until the complaint or information is filed or an indictment returned. Therefore if a valid complaint alleging the commitment of a misdemeanor within the territory of a municipal court is filed after the inception date of that court, the date of the offense is immaterial to the question of jurisdiction. The power of the court to try the case could only be frustrated by the Statute of Limitations.

There is no case directly on point substantiating this view. However, the case of *Stevens* v. *State, supra*, appears to be quite similar. In that case, the Court of Common Pleas of Hamilton County in the January 1855 term had indicted, tried, and convicted the defendant Stevens for maliciously stabbing one John Morris. On appeal, defendant argued that the trial court had no jurisdiction because the act creating it and abolishing the old criminal court was unconstitutional. Without deciding whether that portion of the act abolishing the old criminal court and transferring the cases to the new common pleas court as of January 1, 1855, was constitutional, the Supreme Court of Ohio stated in effect that even assuming that part of the act abolishing the old court to be unconstitutional, the new court was validly created and had jurisdiction to try the defendant. It is clear from reading this case that the offense had been committed before the inception of the new court. The Supreme Court held, however, that the indictment of the defendant was defective since the court, after its inception, had not waited the required time to draw a grand jury. However, the jurisdiction of the newly created court was not questioned. This case is cited because it is the only

case found in which jurisdiction was found in a newly created court over offenses arising prior to the inception date of that court and absent an express statutory transfer provision.

Defendants' last argument concerning the ability of a court being abolished to transfer its pending cases to a newly created court since the courts never existed at the same point in time, is not well taken. R. C. 1901.-04 specifically provides for such situations. In addition, R. C. 1.58 provides in effect that the repeal, amendment or re-enactment of a statute does not affect any investigation proceeding or remedy in respect of any privilege, obligation, liability, penalty, forfeiture, or punishment and that the proceeding or remedy may be instituted, continued, or enforced and the penalty, forfeiture, or punishment imposed as if the statute had not been repealed or amended. This section would at least allow the county or mayor's court to remain in existence until an orderly transfer of cases had been accomplished in accordance with R. C. 1901.04, or if no new court had been provided to dispose of pending matters.

For all the foregoing reasons defendants' motions to dismiss their cases for lack of jurisdiction are overruled.

*Motions to dismiss overruled.*

