THE STATE OF OHIO *v.* CURRENS.

(Nos. C 88 CRB 28929 A and B—Decided May 25, 1989.)

Hamilton County Municipal Court.

*Michael D. Rudd,* for the state.
*Michael Hohn,* for defendant.

MARK P. PAINTER, J. This case comes before the court for decision on defendant's motion to dismiss for lack of jurisdiction. The facts necessary for the court's determination of this issue are undisputed.

I Facts

On October 15, 1988, during the Cincinnati Bicentennial Tall Stacks celebration, the defendant, Thomas J. Currens, Jr., was observed by officers of the Ohio Department of Natural Resources at the mouth of the Licking River, where it flows into the Ohio River, allegedly operating his watercraft too fast for conditions, in that a wake was created. Defendant then

entered the Ohio River from the Licking River and turned upstream, where he was stopped by the officers close to the Kentucky shore, but within the Ohio River. Defendant was then charged with operating a watercraft in violation of R.C. 1547.08, creating a wake in a restricted zone, and operating a watercraft under the influence of alcohol, in violation of R.C. 1547.11. Defendant was taken to a location at the public landing in Cincinnati, Ohio, and administered a breath test to determine his blood-alcohol level: the results of the test showed an alleged blood-alcohol content of .192. Defendant was then cited to appear in this court to answer both charges.

At the hearing on defendant's motion to dismiss, the state of Ohio conceded that the location where the defendant was observed and apprehended on the Ohio River was totally within the boundaries of the Commonwealth of Kentucky. Both parties conceded that defendant could certainly have been prosecuted in Kentucky, but the state of Ohio contended that he also may be prosecuted in this court.

## II Law — Ohio Jurisdiction

This seems to be a case of first impression. The parties have cited no cases, and the court has been unable to locate any, which have dealt directly with this issue.

The border between Ohio and Kentucky has long been a subject of dispute, which culminated in the case of *Ohio* v. *Kentucky* (1980), 444 U.S. 335, in the Supreme Court of the United States. In that case, the Supreme Court decided the boundary line to be in the "low-water mark on the northerly side of the Ohio River as it existed in 1792 when Kentucky was admitted to the Union, not the current low-water mark on the northerly side of the river." *Id.* at headnote. The

cause was remanded to the Special Master to determine the present-day boundaries, based on the low-water mark in 1792. In a later proceeding in *Ohio* v. *Kentucky, supra,* to be found at 471 U.S. 153 by a decree entered on April 15, 1985, the court adopted the Special Master's report and held that "[t]he State of Ohio and the Commonwealth of Kentucky each have concurrent jurisdiction over the Ohio River."

Even though all parties are now able to determine the boundaries between Ohio and Kentucky by virtue of the Special Master's report, and it being stipulated that all events herein occurred in Kentucky, we must now determine whether or not Ohio has statutorily invoked concurrent jurisdiction in this case.

The court has been presented by the state of Ohio with an exhibit entitled "Agreement between the State of Ohio and the Commonwealth of Kentucky Regarding the Jurisdiction on the Ohio River." This document, presented by the prosecution at the original hearing on defendant's motion to dismiss, was signed only by two signatories, not by the Governors of Ohio and Kentucky (though their names were typed below a blank signature line), and was undated except for the year "1986." Obviously, the document does not meet the criteria for admission into evidence, but defense counsel agreed to stipulate its admission if the state would submit a certified copy. The state was given time by the court to submit this document as part of the court record.

However, to the consternation of this court (and probably also to the prosecution), the state has not been able to submit a signed and dated copy of this agreement, because, apparently, one does not exist. The court is somewhat concerned that an unexecuted draft document was submitted by the state as genuine, but the court

certainly has no reason to believe that this was done other than in a good faith belief that the original had been executed. In this purported document, the states would have agreed to certain things, one of which would have been that officers from either state could make apprehensions of alleged lawbreakers on any part of the Ohio River. Also, the laws of the state of registration of the watercraft were to apply to violations anywhere on the river, except that, where a less stringent standard would apply, that standard would be followed in any concurrent jurisdiction case. This provision was evidently an attempt to follow the general law in concurrent jurisdiction matters. Of course, the agreement apparently being non-existent, it must be totally disregarded by the court.

Therefore, the prosecution being unable to produce an agreement concerning concurrent jurisdiction, the court must next determine whether Ohio has jurisdiction by virtue of its statutes and by virtue of the United States Supreme Court pronouncements that both states have concurrent jurisdiction over the river.

R.C. 2901.11(A)(1) provides that "[a] person is subject to criminal prosecution and punishment in this state if * * * [h]e commits an offense under the laws of this state, any element of which takes place in this state[.]" R.C. 2901.11(C) provides that "[t]his state includes the land and water within its boundaries and the air space above such land and water, with respect to which this state has either exclusive or concurrent legislative jurisdiction. Where the boundary between this state and another state or foreign country is disputed, the disputed territory is conclusively presumed to be within this state for purposes of this section." The language concerning "disputed" boundaries was obviously inserted by the legislature to cover the dispute concerning the boundary of the Ohio River, which has since been settled in *Ohio* v. *Kentucky* (1980), 444 U.S. 335. Further, the Supreme Court subsequently held that Ohio and Kentucky have concurrent jurisdiction over the river. *Ohio* v. *Kentucky* (1985), 471 U.S. 153.

Also, the specific R.C. chapter under which defendant has been charged contains an additional jurisdictional provision. The phrase "waters in this state" (R.C. 1547.11[A]) is specifically defined in R.C. 1547.01(I) to include "all * * * rivers * * * which are situated * * * partially within this state or within its jurisdiction, and are used for recreational boating."

From all of the foregoing the court concludes that this defendant may be prosecuted under the laws of the state of Ohio for an offense which technically occurred within the borders of the Commonwealth of Kentucky, but upon the waters of the Ohio River, as Ohio has concurrent jurisdiction over the entire river. As one court has previously noted, the "concurrent jurisdiction * * * [which] the states have over the Ohio [R]iver is over the waters of * * * the river." *Bellaire, ex rel. Sedgwick,* v. *Bellaire, Benwood & Wheeling Ferry Co.* (1920), 13 Ohio App. 356, 358, affirmed (1922), 105 Ohio St. 247, 136 N.E. 899. See *Washington* v. *Svenson* (1985), 104 Wash. 2d 533, 707 P. 2d 120, for a discussion of the effects of concurrent jurisdiction. We also point out that such a prosecution may be fraught with hazard.

### III Jurisdiction — Hamilton County Municipal Court

Municipal courts in Ohio are purely statutory courts. *State* v. *Human* (1978), 56 Ohio Misc. 5, 10 O.O. 3d 164, 381 N.E. 2d 969, paragraph two of the syllabus; *State* v. *Kushlan* (1984), 10 Ohio Misc. 2d 13, 10 OBR 225, 461 N.E. 2d 37. The "jurisdiction" of the

Hamilton County Municipal Court is set out in R.C. 1901.01 *et seq.* and is territorial. "Without question, a court that is statutorily created has no jurisdiction except that granted by statute. * * *" *State* v. *Human, supra,* at 8, 10 O.O. 3d at 166, 381 N.E. 2d at 972.

R.C. 1901.02 states, *inter alia,* that the "Hamilton county municipal court has jurisdiction within Hamilton county." R.C. 1901.20(A) states generally that a "municipal court has jurisdiction of the violation of * * * any misdemeanor committed *within the limits of its territory* * * *" (emphasis added).

Interestingly enough, this problem has been addressed by the legislature as it concerns other municipal courts with adjacent waterways, *e.g.,* "[t]he Oregon municipal court has jurisdiction within [various municipalities] * * * and north within Maumee Bay and Lake Erie to the boundary line between Ohio and Michigan between the easterly boundary of the court and the easterly boundary of the Toledo municipal court." R.C. 1901.02. Certainly, the legislature could extend the jurisdiction of this court to include the Ohio River watercourse adjacent to Hamilton County. However, this court can not usurp the power of the legislature by extending its own jurisdiction.

Therefore, it being quite clear that the court has no jurisdiction to hear this case, it will be dismissed.

*Cause dismissed for lack of jurisdiction.*