Argued June 9; affirmed July 7; rehearing denied
September 8, 1943

## STATE *v.* LILLIE
(139 P. (2d) 576)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*Otto K. Paulus,* of Salem, for appellant.

*Irving D. Brown,* District Attorney, of Bend, for the State.

LUSK, J. The defendant has appealed from a judgment of conviction of larceny by bailee. He has brought no bill of exceptions to this court, and urges as the sole ground for reversal that it appears upon the face of the record that the circuit court was without jurisdiction of the cause.

The defendant was not proceeded against by indictment of the grand jury, but by information filed by the district attorney, purporting to act under authority

of original Art. VII, § 18, of the constitution, which, so far as it is now pertinent, reads as follows:

"No person shall be charged in any circuit court with the commission of any crime or misdemeanor defined or made punishable by any of the laws of this state, except upon indictment found by a grand jury; provided, however, that any district attorney may file an amended indictment whenever an indictment has, by a ruling of the court, been held to be defective in form; provided further, however, that if any person appear before any judge of the circuit court and waive indictment, such person may be charged in such court with any such crime or misdemeanor on information filed by the district attorney. Such information shall be substantially in the form provided by law for indictments, and the procedure after the filing of such information shall be as provided by law upon indictment."

The record discloses that on September 25, 1942, the defendant executed a waiver of indictment; the district attorney filed a motion in writing based upon such waiver "for leave to file herein an information charging the above named defendant with a crime"; the circuit judge made an order which, after reciting the substance of the district attorney's motion, reads: "Therefore, be it ordered by the Court that the District Attorney inquire into this matter and that he be and he is hereby authorized to file herein such information as the facts may warrant"; and the district attorney filed an information charging the defendant with the crime of larceny by bailee. On November 21, 1942, a jury found the defendant guilty of the offense charged, and on November 22, 1942, the court rendered a judgment that the defendant be confined in the Oregon state penitentiary for a period of not to exceed

six years. The judgment contains, among others, the following recitals:

"The defendant Louis E. Lillie appearing in court with his attorney Thomas Boeke and the said defendant having heretofore waived indictment by the Grand Jury of this County and having been charged by information of the District Attorney with the crime of larceny by bailee and having been duly arraigned on said information and the said defendant having made and entered herein his plea of 'Not Guilty' to such information and this cause having been duly and regularly tried by this Court with the assistance of a jury and the said jury by their verdict duly returned and entered herein having found that the defendant is guilty of the crime charged in said Information      *      *      *''

The defendant's waiver, omitting the title of court and cause, reads as follows:

"I, Louis E. Lillie, being held in custody and being accused of a crime do hereby waive examination into said crime by the Grand Jury and indictment therefor and do hereby consent that I be charged with such crime directly before the above entitled court by information of the District Attorney. I make this waiver freely and voluntarily and under no force, threats, or promises whatsoever.

"Dated at Bend, Oregon this 25th day of September, 1942.

                    "Louis E. Lillie
                     Defendant

"C. L. McCauley
 Witness''

The defendant contends, for reasons presently to be stated, that the waiver does not comply with the essential requirements of the constitutional provision, does not, in fact or law, amount to a waiver of the right to be charged by indictment of the grand jury,

and therefore that the court never acquired jurisdiction of the cause.

The people of this state have seen fit to provide in the constitution that one accused of crime may waive indictment by a grand jury and elect to be charged with the crime on information filed by the district attorney. There was a time in the earlier history of the state when it was permissible for the district attorney to proceed by information in all cases, regardless of the desires of the accused. Laws of Oregon 1899, p. 99; *State v. Tucker,* 36 Or. 291, 61 P. 894, 51 L. R. A. 246. But in 1908 the people amended § 18 of Art. VII of the constitution so as to provide that "No person shall be charged in any circuit court with the commission of any crime or misdemeanor defined or made punishable by any of the laws of this State, except upon indictment found by a grand jury"; Laws of Oregon 1909, p. 12. So it remained until 1927 when the people adopted the amendment now in question which authorizes the charge to be made by information of the district attorney when the accused waives indictment.

■ The amendment prescribes no procedure. It is not essential, though it is, without doubt, advisable, for the protection of the interests both of the accused and the state, that the waiver be in writing. It is essential, however, that the person desiring to waive indictment appear before the judge of the circuit court; and the provision also contemplates, we think, that the waiver be not a general one which would allow the district attorney to charge any crime which he might choose, but a waiver of indictment for a particular crime which will authorize the district attorney to proceed against the accused by information for the commission of that crime and no other.

■ It is the contention of the defendant that in the latter particular the challenged waiver is fatally defective; that it is, in truth, a blanket waiver of indictment for any crime whatever. In our opinion the document will not bear that construction. It recites that the defendant "is held in custody" and "accused of a crime", and it "waives examination into *said crime* by the grand jury and indictment therefor", and consents "that I be charged with *such crime* * * * by information of the district attorney". It is obvious that the waiver refers to only one crime—the crime of which the defendant is accused and for which he is held in custody.

■ But it is argued that the waiver itself must show that the defendant knew what he was waiving, that it must specify the crime in question and recite that waiver was made by appearance before a judge of the circuit court. It is even asserted that the waiver must state "the manner, time and place of accusation of a certain definite crime"; that the accused was informed of the nature of the proceedings before the grand jury in detail; and was given an opportunity to consult counsel before signing the waiver. Of course, there is nothing in the constitutional amendment which requires that any of these things appear, and the defendant's contentions, it seems to us, are based upon an entire misconception of the nature of the court's jurisdiction in a criminal case where the charge is made by information instead of indictment. Of that we shall speak later.

The statutes of this state, like those of all the states in the Union, contain many provisions designed to safeguard the rights of a person accused of crime. Upon being arrested he must without delay be taken before a magistrate (§§ 26-1515, 26-1521, 26-1519,

O. C. L. A.). The magistrate must immediately inform him of the charge against him and his rights to the aid of counsel (§ 26-1547); he must be allowed a reasonable time to send for counsel (§ 26-1548); the magistrate must then proceed to examine the case (§ 26-1549); the witnesses must be examined in the presence of the defendant, and may be cross-examined in his behalf or against him (§ 26-1555); the magistrate must inform the defendant that it is his right to make a statement in relation to the charge against him, but that he is at liberty to waive making a statement, and that his waiver cannot be used against him at the trial (§ 26-1556); upon the conclusion of the examination the magistrate, if he finds that there is sufficient cause to believe the defendant guilty, must make a written order holding the defendant to answer the same, which order must designate the crime (§ 26-1570); and make out a commitment accordingly, and the defendant must be delivered into the proper custody together with the commitment (§ 26-1571). Thereafter proceedings are before the grand jury to determine whether the defendant shall be indicted for the crime for which he has been held to answer, unless the defendant elects to waive indictment.

■■ There is a rebuttable presumption that official duty was regularly performed (§ 2-407, subd. 15), and there is nothing in the present record to overcome the presumption that the requirements of the Code to which attention has been called were not all complied with. At every stage of the proceedings—from the arrest down to the commitment—the accused is advised of the charge; and, this being so, it follows that the defendant must be held to have known the crime of which he was accused. And it was waiver of indictment

for that crime, not for some other, or for any crime whatever, that he intended when he said that he waived indictment for the crime of which he was accused.

██ Thereafter the district attorney filed an information charging the defendant with the crime of larceny by bailee. The information recites that "Louis E. Lillie, having appeared before the Court and being accused of a crime, and having waived indictment for such crime, now therefore the undersigned District Attorney, by leave of the Court entered herein, does by this information charge the said Louis E. Lillie with the crime of larceny by bailee committed as follows, to-wit". The defendant was arraigned upon such information, plead not guilty of the crime charged therein, and thereafter went to trial, being represented by counsel. It does not appear by the record before us that the defendant or his counsel at any stage of the proceedings claimed that the information charged a different crime than that to which the waiver referred, and that claim is not now made. Moreover, the order of the court upon the arraignment recites "an information having been heretofore on the 25th day of September, 1942, filed by the District Attorney with the clerk of this Court, charging the defendant with the crime of larceny by bailee, the defendant having heretofore waived the presentment of said charge to the Grand Jury and the District Attorney by leave of court having filed the said information on the said date". It is fundamental that such a recital in the order of a court imports absolute verity, and cannot be contradicted, unless or until it is set aside or reversed. *McMaster v. Ruby,* 80 Or. 476, 480, 157 P. 782; *State v. Gilbert,* 55 Or. 596, 112 P. 436; 15 C. J., Courts, 979, § 404.

■ It is true that the original arraignment order recited that the defendant was charged in the information with the crime of obtaining money by false pretenses and that the defendant pleaded not guilty to that charge. This was an obvious error, since the only information there was charged the crime of larceny by bailee. On the 14th day of January, 1943, the court corrected the error and entered a new order *nunc pro tunc* as of the date of the arraignment, September 25, 1942, to make the record conform to the facts. That is the order from which we have just quoted. It is based on affidavits of bystanders and the court's memory. There can be no question as to the court's power to make such an order, nor of the propriety of its action, and we are bound to accept the *nunc pro tunc* order as containing a true and correct record of what actually occurred on the arraignment. *State v. Donahue,* 75 Or. 409, 416, 144 P. 755, 147 P. 548; 15 C. J., Courts, 979, § 402; Annotation, 5 A. L. R. 1127.

■ The defendant says that the error corrected by the *nunc pro tunc* order was judicial and not clerical or ministerial, and, therefore, not subject to correction. We think that this contention is unsound. While the point of the objection is not made very clear, it seems to be thought that because the error was contained in an order signed by the judge instead of in a journal entry made by the clerk, the court was for that reason undertaking to correct a judicial error, but obviously that is an erroneous notion. "In case of an omission or error in the record the power exists in the court to amend such record so that it shall conform to the actual facts and truth of the case; but a court cannot amend its record to correct a judicial error, or to remedy the effect of judicial nonaction." 15 C. J.,

Courts, 975, § 395. The foregoing is the universal
rule, and it is the doctrine of the cases to which counsel
for the defendant has called our attention: *Grover v.
Hawthorne,* 62 Or. 65, 75, 116 P. 100, 121 P. 804; *State
v. District Court,* 107 Mont. 203, 82 P. (2d) 779. The
court did not correct a judicial error by the *nunc pro
tunc* order, but merely made the record speak the
truth.

■ It is contended that the *nunc pro tunc* order is
invalid because certain alleged rules of the Circuit
Court for the 18th Judicial District, requiring service of
copies of papers upon the adverse party, were not
observed. But "this court cannot take notice of the
rules of the circuit courts unless they are brought before
it in the bill of exceptions": *Stivers v. Byrkett,* 56 Or.
565, 575, 108 P. 1014, 109 P. 386.

■ The suggestions that the record should show
that the accused was informed of the nature of the pro-
ceedings before the grand jury and that he was given
an opportunity to consult counsel before signing the
waiver, are fully met by what was said in *In re applica-
tion of Loundagin,* 129 Or. 652, 661, 278 P. 950. We are
not told who should have informed the accused respect-
ing these matters, but we assume that the judge is
meant, and, if this be so and it is an essential part of
the procedure, — concerning which we express no
opinion—it will be presumed, as the Loundagin case
holds, that the judge did his duty, there being nothing
in the record to indicate the contrary. The defendant
argues that the Loundagin case is not apposite because
it was a *habeas corpus proceeding.* But that is a dis-
tinction without a difference, since the question here
is the identical question so frequently raised on *habeas
corpus*—a claim of want of jurisdiction appearing on
the face of the record. In any event, the principle

announced is one not peculiar to *habeas corpus,* but is of general application.

This brings us to the defendant's basic proposition, namely, that all the facts necessary to confer jurisdiction upon the circuit court must appear affirmatively on the face of the record. Since the fact that the defendant appeared before a judge of the court at the time of the waiver is not shown by the record, it is argued that an essential element of jurisdiction is lacking.

It is well settled and not disputed that a court of general jurisdiction proceeding within the scope of its powers will be presumed to have jurisdiction to give the judgments and decrees it renders until the contrary appears. *In re Lyon,* 128 Or. 94, 98, 265 P. 1087; *Northcut v. Lemery,* 8 Or. 316, 322. The defendant's counsel urges, however, that the circuit court, when trying a criminal cause in which the accusation is by information instead of by indictment, is not a court of general jurisdiction. He says that indictment by a grand jury was a part of the procedure at common law in criminal cases and that in the present case the court was exercising a special power conferred upon it by statute and not according to the course of the common law. It is, therefore, argued that the case is governed by the rule, many times announced and applied by this court in cases of constructive service of process and the like, that in the exercise of such special statutory powers the court is one of special and limited jurisdiction, and the authority for rendering the judgment must affirmatively appear on the face of the record, and no presumption will be indulged to sustain the validity of its judgment or decree. See, *Bagley v. Bloch,* 83 Or. 607, 620, 163 P. 425, and cases there cited.

We think that the complete answer to this contention is to be found in the opinions of the courts in *Godwin v. State,* 24 Del. 173, 74 Atl. 1101, 1913E, Ann. Cas. 940, and *Nichols v. State,* 127 Ind. 406, 26 N. E. 839.

In the Godwin case the defendant was convicted of offering a bribe. He was prosecuted on information filed by the attorney general, pursuant to a provision of the Delaware constitution which authorized such a procedure in certain classes of offenses, including bribery, "after examination and commitment or holding to bail by a Judge or Justice of the Peace". It was also provided that in such cases "the cause shall be heard, tried and determined by the Court without the intervention of either a grand jury or petit jury." The same contention that we are now considering was made in that case. It was urged that "the record must show the compliance with the Constitution, namely, an examination of the appellant before a Justice of the Peace followed by a commitment of him or a holding of him to bail in order that the power of the Court to try the appellant on the charge stated in the information should be established." The court disposed of the objection in the following language:

"There are several answers to this contention. The Court of General Session was not exercising a special constitutional power in derogation of the common law. The jurisdiction to try offenses committed in violation of laws prohibiting bribery at elections had long been vested in the Court of General Sessions, or in similar Courts with different names, for the trial of criminal causes. The only difference made by the Constitution of 1897 relates to the method of the presentment and trial. Presentment by information for indictment and a

trial by the Judges of the Court for trial by a jury are substituted, but neither of these changes made the Court of General Sessions a Court of special jurisdiction, but it continued still to be a Court of general jurisdiction for the trial of offenses of bribery at elections, and, in general, a Court of general jurisdiction in criminal causes. Trial by the Court without a jury upon presentment by information, instead of by indictment, is a matter of procedure and not of jurisdiction. It follows, therefore, that it is presumed that the Court of General Sessions had jurisdiction of the cause and the person of the defendant below, the appellant.

"In this State there are instances of courts of general jurisdiction exercising special statutory jurisdiction, and of some exercising special jurisdiction and procedure in derogation of the common law practice. The Court of General Sessions in administering laws respecting roads and the Superior Court in administering laws respecting ditches are both courts of general jurisdiction exercising a special jurisdiction in the above matters. The former, a Court with general jurisdiction over crimes, adjudicates the laying out, opening and vacating of public roads, while the latter Court, a Court of general jurisdiction of civil causes, appoints commissioners to lay out ditches to drain marsh lands. The Superior Court also has power to appoint commissioners to condemn lands and property under the right of eminent domain possessed by certain municipalities and *quasi* public corporations, and in so doing the Court exercises a special jurisdiction and adopts procedure in derogation of the common law practice. In all such cases jurisdictional facts must appear, must be averred and proved, and there are no presumptions as to the Court's jurisdiction over the subject matter, the person, or the property. So if the civil Court is vested, as in some states, with jurisdiction to try some certain designated crimes, then in so doing the Court would exercise a special jurisdiction.

"Some of the cases cited by counsel in the argument in this Court were of these classes and as to them the rule is well established and wholesome; but these cases do not apply to the jurisdiction of the Court of General Sessions in trying cases of bribery at elections, though the particular offense was one declared by the Constitution and though the Constitution prescribed that it be heard by the Judges instead of by jury and upon information instead of after indictment. No case is shown which satisfies this Court that under such circumstances the Court of General Sessions was exercising a special jurisdiction so as to require jurisdictional facts referred to in the specifications of error to be averred, and, if averred, proven."

In *Nichols v. The State,* supra, the prosecution was by affidavit and information pursuant to statutory authority, and again it was contended that the record must show the facts which confer the right to prosecute without an indictment returned by the grand jury. The statute (§ 1679, Revised Statutes of Indiana 1881) prescribed five classes of cases in which there might be prosecution by information of all public offenses except treason and murder. For purposes of illustration we quote the provision defining the first class:

"Whenever any person is in custody or on bail on a charge of felony or misdemeanor except treason or murder, and the court is in session and the grand jury is not in session or has been discharged".

The court said:

"The contention that it does not appear by the record that a state of facts existed which authorized a prosecution in this case by affidavit and information, proceeds upon the theory that the facts necessary to confer jurisdiction upon the circuit court must appear affirmatively by the record.

"The circuit court is a court of general jurisdiction, and every presumption in favor of its jurisdiction will be indulged by this court, unless something to the contrary appears. It has the exclusive jurisdiction to try and punish felonies in counties where there is no criminal court. Where a court of general jurisdiction has jurisdiction over the subject-matter of the action, if it renders judgment in the case, it will be presumed, in the absence of a showing to the contrary, that jurisdiction was acquired in some legal manner over the person before the rendition of such judgment. Pickering v. State, 106, Ind. 228; Exchange Bank v. Ault, 102 Ind. 322; Mathis v. State, 94 Ind. 562; Pointer v. State, 89 Ind. 255.

"If such a state of facts existed as did not authorize a prosecution of the appellants by affidavit and information, they should have been pleaded by way of abatement, or incorporated into the record in some other appropriate manner. There is nothing in the record showing that the circuit court did not have jurisdiction in this cause, and as it assumed to act, we must presume that jurisdiction existed.

"Indeed, under the provisions of section 1733, R. S. 1881, it is not necessary to state in the information in a prosecution for a felony the facts showing the right to prosecute by information, nor is it necessary to prove such facts, unless put in issue by a verified plea in abatement."

■ We have only to add to the reasoning of the foregoing opinions that we are concerned here, not with a mere matter of procedure according to the course of the common law, but with two methods of accusation in criminal cases provided for by the constitution of this state. Both are in the fundamental law and neither can be said to be in derogation of anything. The circuit courts of Oregon have from their beginning had

general jurisdiction in cases of felony, and it seems to us little short of fantastic to say that the use of a constitutional procedure—which undoubtedly measures up to the requirements of due process—to bring an accused to trial could have the effect of transforming the court into one of limited jurisdiction.

Since, therefore, the circuit court was a court of general jurisdiction and exercising its powers as such in the trial of the defendant, the existence of the facts necessary to give it jurisdiction to render the judgment appealed from will be presumed in the absence of something in the record which contradicts that presumption. There is nothing of that sort in the present record.

Neither do we think that the order of the circuit court authorizing the district attorney to "inquire into this matter and that he be and he is hereby authorized to file herein such information as the facts may warrant" vitiates the judgment. Probably, no order whatsoever was required, for, upon waiver of indictment by the accused, the constitution itself authorizes the district attorney to file an information. As a matter of good practice, however, we think an order is desirable and that it should in terms authorize the filing of an information charging the particular offense respecting which the defendant has waived indictment. But, in view of what has already been determined, namely, that the defendant waived indictment for the crime of which he stood accused and that he knew what that crime was, it is not to be assumed that the district attorney took the order in question as authority to charge any offense within the whole category of crimes, but rather it must be presumed that as a sworn public official in the discharge of his

duty he acted within the limits of the constitutional provision and the defendant's waiver.

■ In the large, this is a case of one properly convicted of crime attempting to escape the consequences through the loopholes of a slovenly record. It is easy enough to have proceedings of this kind show expressly the precise crime of which the defendant is accused and that he appeared before the judge and waived indictment for that crime, naming it. But we are satisfied that no substantial right of the defendant has been violated and that no essential step in the process of bringing him to trial by information has been omitted. There was considerable bungling, but, so far as is disclosed by anything brought to this court, no deceit or imposition. The law requires us to find that the defendant knew of what crime he was accused, and a fair reading of the document he executed leaves no room for doubt that it was for that crime and no other that he waived indictment. He went to trial on an information filed pursuant to the waiver, was represented by counsel, and made no objection. We do not wish to be understood as holding that by this conduct he waived the right to a compliance by the district attorney with the constitutional provision—on that question we express no opinion—but merely that his failure to object indicates that his rights had, in fact, not been disregarded. When to all this we add the presumption of validity which attaches to the judgments of a court of general jurisdiction and that the court in one of its orders recited that the defendant had waived indictment for the crime of larceny by bailee, we find no basis for disturbing the judgment of conviction in this case.

The judgment is accordingly affirmed.