[No. 2235–2. Division Two. July 18, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. THOMAS E. VICKERS, *Appellant.*

*Darrell E. Lee,* for appellant (appointed counsel for appeal).

*Henry Dunn, Prosecuting Attorney,* and *Kenneth L. Cowsert, Deputy,* for respondent.

REED, J.—Defendant Thomas E. Vickers appeals from his jury convictions on two counts of third–degree assault and one count of malicious destruction of property. We affirm.

In the early morning hours of May 12, 1975, defendant Vickers observed his estranged wife leave a tavern in Rainier, Oregon, with one Don Shamp. He watched as the two entered Shamp's 1965 Chevrolet Corvette and proceeded over the Longview Bridge toward the Washington shore. Defendant followed the couple in his half–ton pickup truck, caught up with the Corvette, and collided with its rear end. There was a second collision as the vehicles moved farther north on the bridge and a third, according to Shamp, after they had traveled down the ramp on the Washington side and Shamp attempted to turn off on a road leading into the Longview industrial area. This last impact forced the Corvette off the road and into a field. The Corvette sustained damages in excess of $1,200 as the result of the several collisions.

At trial Shamp testified he was moving at 35 miles per hour when defendant caught up with him, traveling at 80 to 90 miles per hour, and struck the rear of the Corvette. As Shamp attempted to recover from the first blow there was a second, and he found himself being pushed down the road by defendant's truck. Shamp attempted to brake and bring

both vehicles to a stop but discovered his brakes had been rendered inoperative by the first impact. Shamp then accelerated away from defendant and down the bridge ramp, reaching a speed of 80 to 90 miles per hour. As he down–shifted in an effort to slow his speed and negotiate the rather sharp turn at the bottom, defendant's vehicle struck him again.

At the close of the State's case defendant moved for dismissal on the ground the State had not established jurisdiction over the offenses, *i.e.,* that they had occurred in the state of Washington. The trial court also expressed doubts as to adequacy of the proof of jurisdiction and permitted the State to reopen its case and present additional evidence on the issue. Defendant objected to the reopening and has assigned that as error.

At trial investigating officers testified that evidence of the collisions was found north of the approximate center of the bridge; this consisted of a puddle of brake fluid (two–tenths of a mile north) and debris from a Corvette (a thousand feet north). The testimony established that the bridge rises from the Oregon shore, flattens out, rises again and then descends to the Washington shore. At the approximate center of the level section between the two largest or main supports there is a visible seam or joint, directly above which is a sign reading "State of Washington." The point at which the brake fluid and debris were found was also north of the point on the bridge down ramp where an 8–foot cyclone fence has been established on either side for the apparent purpose of preventing the throwing or dropping of objects onto the Port of Longview property below. Several witnesses testified the bridge traverses land only from the point where the 8–foot fence begins.

■ Defendant urges it was error to permit the State to reopen for additional testimony in an attempt to locate the boundary line between Washington and Oregon. Such motions are addressed to the sound discretion of the trial judge and rulings thereon will be overturned only for a manifest abuse of that discretion. *E.g., Jarstad v. Tacoma*

*Outdoor Recreation, Inc.*, 10 Wn. App. 551, 519 P.2d 278 (1974). In the instant case the additional testimony related only to the physical characteristics of the bridge as an aid in determining which span was the "main span." We find no abuse of discretion.

Defendant also challenges the sufficiency of the proof as it relates to the locus of the crimes charged. He contends the State never did establish or sufficiently identify the "main span" of the Longview Bridge, and not having done so, the jury could not find the offenses took place in Washington. RCW 43.58.060 contains the terms of the Oregon–Washington Columbia River boundary compact which provides that the boundary line between the states of Oregon and Washington along the course of the Columbia River at the location of the Longview Bridge is established at "a point on the center line of the Longview Bridge at center of main span." We agree with defendant that the burden was upon the State to establish that the acts constituting the crimes occurred within the state of Washington. We also agree it would have been better had the State been able to offer direct expert opinion evidence as to which of the bridge's three spans is the "main span."[1]

In the final analysis this determination was for the jury and although expert opinion would have been helpful in resolving the issue it is not the exclusive method of establishing that fact. Sergeant Bourdage of the Longview Police Department, who was not permitted to opine as to which was the "main span," described the structural design of the bridge and indicated in words and by sketches that, while there were three spans, the center span was supported by the largest and highest pillars, and spanned the longest distance and the most water; he testified also that the bridge appeared to be joined together with an obvious seam at a point at the center of the span. Further, he stated

---

[1]The State attempted to call an engineer for this purpose, but the trial judge would not permit it to do so because his name had not earlier been disclosed to defendant and the judge had already permitted the tardy endorsement of additional witnesses.

that directly over the seam was a sign reading "The State of Washington." Additionally, as we have previously noted, there was testimony from investigating officers locating at least two collision points north of that portion of the bridge where the 8-foot cyclone fence begins over the dry land area of the Longview Port dock and industrial development area. All this, together with Shamp's testimony is substantial evidence supporting a conclusion that the series of assaults took place in Washington.

Next defendant contends he was improperly charged with a felony under former RCW 9.61.070(3) relating to malicious destruction of property with a value of more than $250. Defendant claims he should have been charged with a violation of RCW 9.61.040(7) which makes it a misdemeanor to "Destroy or damage, with intent to prevent or delay the use thereof, any engine, machine, tool or implement intended for use in trade or husbandry". Defendant relies upon *State v. Seger*, 1 Wn. App. 516, 463 P.2d 185 (1969) in which it was held that a defendant who fired shots into the engine of one crane and the radiators of two others at a construction site had been erroneously charged under RCW 9.61.070 instead of former RCW 9.61.040(7). In *Seger* it was undisputed that the damage was inflicted upon an "engine" or "machine" and that the cranes were "intended for use in trade." The decision in *Seger* therefore is no authority for defendant's position that Shamp's 1965 Corvette qualified under the misdemeanor statute simply because Shamp admitted he used his automobile to travel to and from his work as a pipe welder and steam fitter. Assuming without deciding that an automobile may, in certain circumstances, qualify as an "engine or machine," as the terms are used in the statute, we cannot agree the legislature intended to include a workman's personal means of transport to his job in the definition "for use in trade." The assignment is not well taken.

Lastly, defendant argues the prosecuting attorney was guilty of misconduct when he attempted to argue to the jury that he had offered to present the testimony of an

engineer but had been prevented from doing so by the defense attorney. Our examination of the record leads us to conclude the comment was improper, but not cause for overturning the verdicts. The court sustained defendant's objection before the remark was completed and admonished the jury to disregard it. The error was cured. *State v. Wilson*, 16 Wn. App. 348, 555 P.2d 1375 (1976).

Judgment affirmed.

PETRIE, C.J., and PEARSON, J., concur.