[No. 51149-7. En Banc. October 3, 1985.]

THE STATE OF WASHINGTON, *Petitioner*, v. THOMAS E. SVENSON, ET AL, *Respondents*.

*Jeff M. Campiche, Prosecuting Attorney,* and *Douglas E. Goelz, Deputy,* for petitioner.

*August F. Hahn,* for respondent Svenson.

*Jack B. Micheau* and *Copland & Micheau,* for respondent Nelson.

*Kenneth O. Eikenberry, Attorney General,* and *Thomas F. Carr, Senior Assistant,* amici curiae for petitioner.

CALLOW, J.—The State appeals the superior court ruling finding Thomas Svenson and Steve Nelson not guilty of violating WAC 220-32-031, unlawful operation of a salmon gill net in a closed area, Columbia River Management Area 1A. We affirm.

On August 27, 1980, Steve Nelson was cited for violation of WAC 220-32-031, unlawful gillnetting, by Washington Fisheries officers. A bench trial was held in North District Court for Pacific County. The District Court held that if the fishing was not legal on the Oregon side of the Columbia River, the territory in which the defendant was cited, a verdict of guilty would be entered. However, if such activity was legal in Oregon, a finding of not guilty would be entered. The court advised defense counsel that proof the acts were legal in Oregon would be an affirmative defense. Nelson offered no proof and a guilty verdict was entered. Nelson appealed to the Superior Court.

Thomas Svenson, an Oregon resident, was also cited by Washington Department of Fisheries officers for unlawful gillnetting on August 25, 1981, at about 10 p.m. In a bench trial in the South District Court for Pacific County, he was found guilty and he too appealed the decision to the Superior Court.

Oral argument was heard in superior court in the Nelson case before it was set in Svenson's case. Since Nelson presented the same issue raised by Svenson, Svenson's counsel stipulated that the issues and arguments were the same. The court ruled in favor of Nelson. The State and Svenson stipulated that the superior court decision would be controlling for purposes of appeal.

The Superior Court Judge noted in his memorandum opinion of February 14, 1983, that the evidence at trial failed to establish that Nelson was illegally gillnetting on the Washington side of the Columbia River. He then stated: "The crux of this case is whether this State has jurisdiction over fishing activities on the Oregon side of the boundary 'line' defined by R.C.W. 43.58 where there exists no proof that Oregon and Washington have enacted laws or regulations 'only with the mutual consent and approbation of both states.'" He then held "the State . . . has the burden to provide what law exists." The Superior Court Judge dismissed the case holding that the State had failed to meet its burden of proof.

The cases were consolidated in the Court of Appeals for appellate review and transferred to this court.

I

The issue presented by the consolidated appeal is whether the term "concurrent jurisdiction" requires that both Oregon and Washington enact the same fishing regulation to permit a Washington Fisheries officer to enforce a particular Washington regulation in Oregon waters. A related issue is whether the presence of a similar Oregon regulation is an affirmative defense or a question of jurisdiction and thus the State's burden. To answer the first

question we must examine the history of the Washington and Oregon Territories and the origins of the grant of concurrent jurisdiction over the Columbia River.

The Territory of Washington was created by the Organic Act, Ch. 90, 10 Stat. 172 (1853) at the same time Congress enacted Oregon's Enabling Act. Washington Territory was carved out of the Oregon Territory and included "[A]ll that portion of Oregon Territory lying and being south of the forty–ninth degree of north latitude, and north of the middle of the main channel of the Columbia River . . ." Ch. 90, § 1, at 172. "*And be it further enacted,* That the Territory of Oregon and the Territory of Washington shall have concurrent jurisdiction over all offenses committed on the Columbia River, where said river forms a common boundary between said Territories." Ch. 90, § 21, at 179. This provision, codified in 1873, 18 Stat. § 1950, p. 342, was repealed by Act of March 3, 1933, 47 Stat. 1429.

Oregon became a state in 1859 and its admission act gave Oregon concurrent jurisdiction over the waters forming the boundaries of the state. Ch. 33, § 2, 11 Stat. 383 (1859). One of the boundaries is the middle channel of the Columbia River "including jurisdiction in civil and criminal cases upon the Columbia River and Snake River, concurrently with States and Territories of which those rivers form a boundary in common with this State." Ch. 33, § 1, 11 Stat. 383 (1859).

Meanwhile, Washington's Enabling Act, ch. 180, 25 Stat. 676 (1889) made no mention of the jurisdiction over the Columbia. Sections 22 and 23 of the act, however, permit an inference that concurrent jurisdiction over the Columbia continued. Finally in 1915 the States of Washington and Oregon entered into the Columbia River Compact, RCW 75.40.010, approved by Congress in 1918, which provides:

There exists between the states of Washington and Oregon a definite compact and agreement as follows:
All laws and regulations now existing or which may be necessary for regulating, protecting or preserving fish in the waters of the Columbia river, or its tributaries, over

which the states of Washington and Oregon have concurrent jurisdiction, or which would be affected by said concurrent jurisdiction, shall be made, changed, altered and amended in whole or in part, only with the mutual consent and approbation of both states.

In 1983 the Legislature defined concurrent waters of the Columbia to mean "those waters . . . that coincide with the Washington–Oregon state boundary." RCW 75.08.011(9).

Between 1889 and 1918 the issue of concurrent jurisdiction over the Columbia was discussed in three federal court opinions. Most important of the three was *Nielsen v. Oregon*, 212 U.S. 315, 53 L. Ed. 528, 29 S. Ct. 383 (1909) in which the Court observed that when two states have concurrent jurisdiction, the one first acquiring jurisdiction over a crime may prosecute and punish for an act punishable by the laws of both states. The Court noted however that the rule is inapplicable when the act is prohibited in only one of the States, and went on to hold that a State cannot prosecute for a violation of its laws when the act not only occurs within the territory of another State but is also permitted by that State.

An earlier case had held that Oregon could not prosecute an Oregon resident for violation of an Oregon law in Washington waters. *In re Mattson*, 69 F. 535 (C.C.D. Or. 1895).

The word "concurrent," in its legal and generally accepted definition, means acting in conjunction, and . . . can [here] only mean the power to enact such criminal statutes as are agreed to or acquiesced in by . . . Washington, or as are already in force within its jurisdiction.

*Mattson,* at 542. The right of citizens of a state to fish is not subject to control or regulation by the other unless there is mutual agreement to that end. *Accord, Ex parte Desjeiro,* 152 F. 1004 (C.C.D. Or. 1907). Hence, at the time of adoption of the Columbia River Compact in 1918 existing law appeared to require that for enforcement by one state of its own regulation against citizens of another in that state's territory, the second state must have a similar regulation or acquiesce in the first state's regulations.

Washington and Oregon have since entered into a compact to define the precise boundary line between the two states. RCW 43.58.090 (1965) (repealing RCW 43.58.010–.040, an act establishing a commission to investigate and make a treaty with Oregon defining the precise boundary between the states). The Boundary Compact took effect after passage by both Washington (Const. art. 24, § 1 (amend. 33) (1958)) and Oregon (Or. Rev. Stat. § 186.520 (1957)) legislatures, and approval by the United States Congress.

## II

A compact is a binding legal instrument which provides for formal cooperation between states. F. Zimmerman & M. Wendell, *The Law and Use of Interstate Compacts* ch. 4. (Council of State Governments (1976)). Authority to enter into such compacts is found in article 1, section 10 of the United States Constitution. Compacts have been used to settle matters involving boundary disputes, energy conservation, civil defense, workmen's compensation, mass transit, fisheries and other issues. It was only in the 1920's, however, that compacts came to be used for more than settlement of interstate boundary disputes.

Compacts are both statutory and contractual at the same time. Consequently, statutory interpretation and contract law are applicable. Zimmerman, at 2. There is a relatively small body of case law construing compacts, and that which does exist must be used with caution because the term "compact" has been loosely used as a synonym for nearly any solemn agreement. Zimmerman, at 3. Construction of the Columbia River Compact has been infrequent. Nevertheless, the writers on compacts have observed that "[t]he fisheries compact between . . . Oregon and Washington in 1915 groped toward a degree of uniformity in boundary water fishery regulations by requiring concurrent legislative action in the member states." F. Zimmerman & M. Wendell, *The Interstate Compact Since 1925,* at 4–5 (1951).

It has been suggested that the Columbia River Compact

does not recognize concurrent jurisdiction with respect to gill–net fishermen as the same type of jurisdiction referred to in statutes and enabling legislation. Wollenberg, *The Columbia River Fish Compact,* 18 Or. L. Rev. 88 (1938–1939). The article posits that only gill–netters occupy the *thalweg,* or central portion of the river, whereas other fishermen set their nets into the banks of the river and are subject only to the jurisdiction of the State on whose territory the nets are fixed. Hence, concurrent jurisdiction only applies to gill–netters. "The only significance that concurrent jurisdiction has for purposes of fish control on the river, from the standpoint of the license statutes, is that an unlicensed nonresident may be arrested by Oregon [or Washington] officials for fishing unlawfully irrespective of where he is on the river." Wollenberg, at 100. "[T]he working arrangement which exists on the Columbia under the fish compact is a compromise between concurrent jurisdiction exercised to its legal limits and mutually exclusive state jurisdiction to the *thalweg.*" Wollenberg, at 98. "Concurrent jurisdiction would be effective in any case only for the gill–net fisheries . . . [where] [b]oats and nets are often in two states at once." Wollenberg, at 99.

Case law from other jurisdictions construing the term "concurrent jurisdiction" around the time of the 1918 compact supports the interpretation of those commentators. The Court of Appeals of Kentucky held that concurrent jurisdiction over a river which is a boundary permits the exercise of criminal jurisdiction over all the river because one state was the original proprietor of the river and ceded to the other state only the land on the opposite side. *Nicoulin v. O'Brien,* 172 Ky. 473, 189 S.W. 724 (1916). There the State of Kentucky prosecuted a seine fisherman for fishing on the Indiana side of the Ohio River in violation of Kentucky law. The court recognized that

> [t]he peculiar character, however, of the Ohio river, lying, as it does, entirely within the boundary of the State of Kentucky, clearly differentiates it from other dividing waters, such as the Columbia . . . whose middle threads

divide the territories of the respective states occupying their opposite shores.

*Nicoulin,* at 480. The court further observed:

> [concurrent] jurisdiction is conferred . . . to render more efficient the policing of the stream, and to prevent the loss and confusion which would result from defeating actions by pleas to the jurisdiction, when it might be difficult to determine precisely where the act occurred.
>
> It would, however, be a harsh rule that would give each State the power to exclusively establish its own laws over the entire water, regardless of its boundary line, because laws might be enacted which were diametrically opposed.

*Nicoulin,* at 480. The court continued:

> It is an elementary proposition that a state may authorize or forbid the doing of acts which depend upon territorial rights, such as the regulation of fisheries . . . which acts cannot be interfered with by the owner of the opposite shore. It cannot, however, forbid fishing in the opposite half of the stream . . . when those acts are authorized by the laws of the owner of that side of the stream.

*Nicoulin,* at 481.

The *Nicoulin* decision embraced the *Nielsen* Court's statement that Oregon may not punish a person in Washington water for doing what is legal there but illegal in Oregon. It further quoted the Wisconsin Supreme Court to the effect that concurrent jurisdiction

> "does not include the right to regulate the enjoyment by the people of one state . . . [to] fish . . . [nor does it] empower one state to spread its mere police regulations over territory of another, regulating the sovereign property right of the latter in or to the water flowing over such territory, or to the fish therein . . ."

*Nicoulin,* at 492, quoting *Roberts v. Fullerton,* 117 Wis. 222, 93 N.W. 1111 (1903).

Subsequent interpretations of the Columbia River Compact have not contradicted a construction of the Compact to require the affirmative act of both states to permit one state to enforce its laws on the other side of the river. *Olin v. Kitzmiller,* 259 U.S. 260, 66 L. Ed. 930, 42 S. Ct. 510

(1922) interpreted the Compact to permit Oregon to deny a fishing license to a nonresident although Washington did not have a similar statute. The Court observed "we cannot conclude that the parties intended by the identical provision [in the 1918 Columbia River Compact] to obligate themselves to issue *any* fishing license; the purpose was to limit the classes of persons who might have [licenses]— beyond which the State might not go." *Olin,* at 263.

This court has also interpreted the Compact to permit Washington to enact regulations not concurred in by Oregon.

> "We cannot conclude, however, that the parties thereto intended by the provisions of the compact to divest themselves of the power to legislate upon the subject embraced therein, so long as they do not undertake to permit the taking of fish at a time, in a manner, by means of appliances not permissible at the time the compact was made. In other words, the compact is a limitation beyond which the states may not go, but it is not an inhibition against the narrowing by either state . . ."

*State ex rel. Gile v. Huse,* 183 Wash. 560, 563, 49 P.2d 25 (1935) quoting *P.J. McGowan & Sons, Inc. v. Van Winkle,* 21 F.2d 76, 77 (D. Or. 1927), *aff'd,* 277 U.S. 574, 72 L. Ed. 995, 48 S. Ct. 435 (1928). This was reiterated in *Northwest Gillnetters Ass'n v. Sandison,* 95 Wn.2d 638, 646, 628 P.2d 800 (1981) wherein the court quoted *Huse* and stated "[t]he compact therefore prevents the states only from permitting what was otherwise not permissible in 1918, the year in which it was enacted."

■ The Compact, as written and interpreted, restricts the right of either state to expand fishing beyond that permitted in 1918, but does not restrict the right of either state to limit fishing. The purpose of the Compact is to assist in preserving the fish in the Columbia and gives both states the authority to act accordingly. The reference to concurrent jurisdiction does require concurrence by the other state, however, when there is to be enforcement by both states on the entire river. In any event, each state may enforce its own laws with respect to its own citizens on its

own side of the river absent concurrence in the law by the other state. 35 Am. Jur. 2d *Fish and Game* § 33 (1967); 81A C.J.S. *States* § 12 (1977). However, for a person to be convicted of a Washington crime on the Oregon side of the river, Oregon must have similar legislation.

### III

The proof of Oregon law is the prosecution's burden. The State must prove (1) Oregon has a similar criminal statute prohibiting the act prohibited by Washington or (2) that Oregon has not acted or (3) that Washington and Oregon always act in conjunction when enacting legislation with respect to fishing on the river. We are concerned with a criminal statute and the burden is on the State to prove jurisdiction and each element of the crime. *State v. O'Dell,* 46 Wn.2d 206, 279 P.2d 1087 (1955).

The status of Oregon law with respect to fishing regulations is an element of the crime, as it relates to whether the court has jurisdiction to hear the matter. Jurisdiction must be proved beyond a reasonable doubt and the burden of proof is on the State. *State v. Vickers,* 18 Wn. App. 111, 567 P.2d 675 (1977). *See also State v. Baldwin,* 305 A.2d 555, 67 A.L.R.3d 979 (Me. 1973); *State v. Greene,* 86 S.D. 177, 192 N.W.2d 712 (1971), *cert. denied,* 406 U.S. 929 (1972). This is so because not only are significant rights of the defendant affected, but the State is exercising its sovereignty and is bound to assure that it does so with authority. *Accord,* Model Penal Code §§ 1.12(1), 1.13(9)(c) (Proposed Official Draft 1962). We may not permit the State to rely on the presumption that Oregon and Washington always enact the same regulations. Conclusive and burden shifting presumptions are unconstitutional in a criminal case when they act to relieve the State of proving the crime beyond a reasonable doubt. *State v. Johnson,* 100 Wn.2d 607, 617, 674 P.2d 145 (1983).

Moreover, the defendant has a right to notification of the crime with which he is charged. He must be able to determine that he is committing a crime when doing so. The

State must prove the efficacy of its own criminal statute. It cannot simply presume Oregon law and expect a court to adopt its presumptions.

We affirm the trial court's dismissal of the cases against Svenson and Nelson. The Compact permits the States to enact legislation which limits fishing activity but it does not permit enforcement by one state of its own laws in the physical territory of the other absent similar legislation by the other state. When the State of Washington is enforcing its law in Oregon territory, it is the State's burden to prove how its jurisdiction extends from the boundary line fixed by RCW 43.58.060 to the high tide on the Oregon side.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, GOODLOE, and DURHAM, JJ., concur.