900 P.2d 1119 (1995)
79 Wash.App. 133
The STATE of Washington, Respondent,
v.
L.J.M., Appellant.
No. 13792-9-III.
Court of Appeals of Washington, Division 3, Panel Three.
August 29, 1995.
*1120 Scot D. Stuart, Thomas E. Weaver, Jr., Law Office of Scot D. Stuart, Okanogan, for appellant.
Barnett N. Kalikow, Pros. Atty., Okanogan, for respondent.
SCHULTHEIS, Judge.
L.M. was convicted of one count of first degree child rape. He contends there was no competent evidence sustaining the trial court's ruling that it had jurisdiction over *1121 him and the issue of jurisdiction presented a jury question. We reverse and dismiss.
In May 1992, H.M., then eight years old, told his mother that his father had hurt him by inserting his penis into his anus. This first occurred in the winter of 1987 when H. was three years old. There was no testimony as to how many rapes followed, but this was a continuing practice over about a three-year period. The Okanogan County Prosecutor charged L.M. with one count of first degree child rape. L.M. is an enrolled member of the Colville Confederated Tribe. The incident occurred within the boundaries of the reservation. The FBI agent assigned to the case was James Davis. The reason for FBI involvement is that absent a proper assumption of jurisdiction by a state, most crimes committed by an Indian on tribal lands are prosecuted in federal court. 18 U.S.C. §§ 1151-1153. In 1963, Washington enacted RCW 37.12 which assumed conditional jurisdiction pursuant to Public Law 280.[1]See generally Washington v. Confederated Bands and Tribes of the Yakima Indian Nation, 439 U.S. 463, 465-76, 99 S.Ct. 740, 743-49, 58 L.Ed.2d 740 (historical overview of State's criminal jurisdiction over Indians), reh'g denied, 440 U.S. 940, 99 S.Ct. 1290, 59 L.Ed.2d 500 (1979); see also In re Estate of Cross, 126 Wash.2d 43, 46-47, 891 P.2d 26 (1995) (history of Public Law 280). In 1986, Washington retroceded jurisdiction over several reservations including the Colvilles. RCW 37.12.100-.120; see State v. Hoffman, 116 Wash.2d 51, 65-71, 804 P.2d 577 (1991). Under present law, if an offense occurs on fee lands within the Colville reservation,[2] charges may be brought in state court. If the offense occurs on non-fee lands, federal jurisdiction is exclusive. Agent Davis determined that L.M.'s residence, where the rape took place, was held in fee. Accordingly, the case proceeded in Okanogan Superior Court.
At the conclusion of trial, L.M. moved to dismiss for lack of evidence that the rape occurred on fee land. The court allowed the State to reopen its case in chief and held an evidentiary hearing outside the presence of the jury. Agent Davis testified he ascertained the residence was held in fee. He verified this information with Sergeant Gary Carden, a tribal police officer. Appropriate objections were made to this hearsay and overruled. S.C., H.'s mother, testified she still resided at the house where the rape occurred and sent monthly rent checks to McDaniels & Associates, a real estate firm in Tonasket. The court held the showing adequate and ruled that jurisdiction had been established. Trial concluded shortly thereafter. The jury convicted and L.M. was given a standard range sentence of ninety months.
L.M. contends the court's jurisdictional ruling was based entirely on multiple layers of hearsay and irrelevant testimony. Although technically not an "element" of a crime in the conventional sense, proof of jurisdiction beyond a reasonable doubt is an integral component of the State's burden in every criminal prosecution. State v. Svenson, 104 Wash.2d 533, 542, 707 P.2d 120 (1985). This is why WPIC "to convict" instructions always require the jury to find beyond a reasonable doubt that the offense was committed in the state of Washington. WPIC 4.21. In the normal course, proof that a crime was committed in Washington establishes jurisdiction. State v. Vickers, 18 Wash.App. 111, 114-15, 567 P.2d 675 (1977); RCW 9A.04.030(1). Difficult issues arise, however, when all or part of an offense occurs within the territorial boundaries of the State, but in an enclave over which the State lacks jurisdiction. An example is State v. Lane, 112 Wash.2d 464, 771 P.2d 1150 (1989). Lane was an interlocutory appeal decided prior to trial. The accused plotted the murder of a woman, kidnapped her, transported her to a federal military base and killed her. Had all acts occurred on the base, federal *1122 jurisdiction would have been exclusive. Lane, 112 Wash.2d at 469-70, 771 P.2d 1150. Because at least one essential element of the crime took place off the base, the court held the State presented a prima facie case of jurisdiction. Lane, 112 Wash.2d at 471-73, 771 P.2d 1150. Whether that prima facie showing would ripen into a proven fact would abide trial: "[A]t trial the State will have the burden of proving beyond a reasonable doubt that jurisdiction does in fact rest with the Washington courts." Lane, 112 Wash.2d at 476, 771 P.2d 1150. Here, all acts occurred within the boundaries of the state of Washington, but all acts also occurred within the boundaries of the Colville reservation. The question then became whether proof that the offense occurred on fee land was a necessary fact on which the State bore the burden of proof.
A trial court has substantial discretion in taking hearsay in bench proceedings because it is presumed the judge will disregard inadmissible testimony. State v. Jenkins, 53 Wash.App. 228, 231, 766 P.2d 499, review denied, 112 Wash.2d 1016 (1989). "A trial judge is presumed to be able to disregard inadmissible evidence, thus avoiding any prejudice to the defendant." State v. Melton, 63 Wash.App. 63, 68, 817 P.2d 413 (1991), review denied, 118 Wash.2d 1016, 827 P.2d 1011 (1992). Agent Davis could not be effectively cross-examined on anything he said. He spoke with Sergeant Gary Carden of the tribal police who assured him the land was held in fee. Where, when and from whom Sergeant Carden secured this information is not in the record. Agent Davis assumed it came from the tribal property records center. The State sought to qualify Agent Davis as an expert because since the date of retrocession, he has investigated numerous crimes on the Colville reservation and in each one, the status of the land on which they occurred was a threshold determination. If the offense occurred on trust lands, he would make a referral to the U.S. Attorney. If on fee lands, he would make a referral to the county prosecutor. On cross examination, Agent Davis conceded he had "no particular expertise in the title to property... on the reservation or anyplace else."
The tribal records keeper could have testified. He could have brought the records into court where they would have been admissible upon a proper foundation being laid. RCW 5.45. Moreover, if the land was deeded, the county auditor, who is located in the courthouse, was readily available as were the public records. The testimony relied on to establish jurisdiction is double hearsay, and possibly triple hearsay depending on Sergeant Carden's source of information. Absent reliance on some recognized exception to the hearsay rule, the trial court would have been required to mentally ignore everything heard from Agent Davis. Not only does no such exception appear on the record but the court understood it was relying on hearsay, stating "The reason that the Court's had to rely on hearsay and the statement of [S.C.] is because of the timing here."
H.'s mother testified she sent rent checks to McDaniels & Associates. The State urges this leads to an inference that because she did not pay the tribe or a government agency, the land must have been held in fee. However, this limited testimony falls far short of proof beyond a reasonable doubt.
L.M. next contends the issue of jurisdiction was for the jury to determine. He proposed a jury instruction which would have required the jury to find that the rape occurred in Okanogan County and did not occur on lands of the Colville Indian Reservation. The court had previously ruled that jurisdiction is a question of law and declined to give the instruction. The proposed instruction misstates the issue. The question is not whether the offense occurred on the reservation, which it did, but whether it occurred on fee lands within the reservation. Subject matter jurisdiction may be raised at any time and even on appeal for the first time. McIntosh v. Nafziger, 69 Wash.App. 906, 910 n. 4, 851 P.2d 713 (1993). Thus, the error need not be preserved at the trial court level. RAP 2.5(a)(1). The issue is not whether it was error to give this particular instruction (which it was not), but whether the court was required to give a correct instruction once the issue of jurisdiction was raised.
*1123 Whether territorial jurisdiction is a question for the court or the jury is unsettled. The leading proponent of the first rule is State v. Beverly, 224 Conn. 372, 618 A.2d 1335 (1993). Beverly reasoned that courts have inherent authority to determine their own jurisdiction and the Sixth Amendment entitles an accused to a jury of his peers only on factual issues central to the statutory elements of an offense. Beverly, 618 A.2d at 1338. Beverly purports to represent the majority rule, but this is doubtful. See Beverly, 618 A.2d at 1339 (Berdon, J., dissenting); see also State v. Willoughby, 181 Ariz. 530, 892 P.2d 1319, 1325-26 (1995) (collecting cases). There is a pronounced split on the question and the weight of authority is that when there is evidence from which the jury could find jurisdictional facts, an instruction must be given. "It is important to recognize that this territorial jurisdictional issue is a factual determination which is within the province of the jury to resolve under appropriate instructions." Lane v. State, 388 So.2d 1022, 1028 (Fla.1980), cited with approval in Lane, 112 Wash.2d at 476 n. 31, 771 P.2d 1150; accord, State v. Liggins, 524 N.W.2d 181, 184 (Iowa 1994) ("We believe state territorial jurisdiction is an essential element of the crime."); People v. McLaughlin, 80 N.Y.2d 466, 606 N.E.2d 1357, 591 N.Y.S.2d 966, 968-69 (1992); McKinney v. State, 553 N.E.2d 860, 863-66 (Ind.Ct.App. 1990). Falling in between is a line of cases which suggest that whether the jury should be instructed depends on the significance of the facts in dispute.
The issue of sovereign jurisdiction is normally a legal question for the trial court. Where determination of jurisdiction depends upon a resolution of disputed facts, the issue must be submitted to the jury with an appropriate instruction, regardless of whether it was raised by the defendant. However, no plain error results from a failure to submit the issue to the jury if the uncontested facts overwhelmingly support jurisdiction.
People v. Cullen, 695 P.2d 750, 751 (Colo.Ct. App.1984), cited with approval in Lane, 112 Wash.2d at 474, 771 P.2d 1150; see also Commonwealth v. Bighum, 452 Pa. 554, 307 A.2d 255, 258-59 (1973), receded from on other grounds in Commonwealth v. Randall, 515 Pa. 410, 528 A.2d 1326 (1987).
A close reading of Lane militates in favor of concluding that resolving jurisdictional facts falls within the province of the jury. Lane held that "at trial the State will have the burden of proving beyond a reasonable doubt that jurisdiction does in fact rest with the Washington courts." Lane, 112 Wash.2d at 476, 771 P.2d 1150 (emphasis added). This language suggests that jurisdiction is a fact question if dependent upon the resolution of factual issues. The decision does not mention a jury, but if the question were for the court, one might think this radical departure from the customary practice of submitting fact questions to the finder of fact would have been addressed. Lane involved a peculiarly factual question:
[I]f the State makes a sufficient showing to establish that premeditation occurred in this state outside Fort Lewis before the infliction of the fatal wounds at Fort Lewis, then the State of Washington has jurisdiction to try petitioners for the crime of aggravated first degree murder.
Lane, 112 Wash.2d at 473, 771 P.2d 1150.
It cannot be seriously argued that the trial judge would make this determination. Moreover, although not binding, it is noteworthy that the WPIC has addressed the topic:
In most cases there will be no factual dispute as to jurisdiction and the jurisdictional element of the "to convict" instruction will be sufficient to satisfy jurisdictional requirements. However, if the facts on which jurisdiction is based are in dispute, the State has the burden of proving beyond a reasonable doubt at trial that jurisdiction does in fact rest with Washington courts. In this situation a special verdict form should be given to the jury that inquires whether the State has proved beyond a reasonable doubt that the element in question occurred within the State of Washington.
WPIC 4.20, Introduction (citations omitted).
The interesting twist here is that the jurisdictional facts are not in dispute and the evidence is underwhelming, consisting, as it does, of multiple layers of hearsay and an *1124 inconsequential reference to the identity of the landlord. L.M. does not contend his home was situated on trust land. Instead, he contends, "I'm the accused. My plea of not guilty placed every fact essential to conviction in contention. State, you prove those facts, including the jurisdictional facts." With respect to the elemental facts, L.M. was entitled to stand mute, call no witnesses and present no evidence because the burden of proof never shifted to him in any respect. WPIC 4.01. The presumption of innocence alone was enough to merit acquittal if the State failed to sustain its burden. WPIC 4.01.
The State was required to prove such matters as whether H.'s biological father was at least twenty-four months older than him and whether H. was married to his father. The first is a question of physical possibility and the second a question of legal possibility. Yet, these nonissues were required to be presented to the jury and to be proven beyond a reasonable doubt whether the defense controverted the facts or not. When it came to the jurisdictional facts, however, the court shifted at least the burden of raising the issue,[3] and perhaps the burden of producing evidence as well.[4]
This is the crux of the issue. May a defendant fail to present evidence on the question of jurisdiction, or even tender a theory as to why jurisdiction is lacking, and still complain that the jury should have determined jurisdictional issues? The answer depends on what Lane meant when, quoting Cullen, 695 P.2d at 751 with apparent approval, it stated "no plain error results from a failure to submit the issue to the jury if the uncontested facts overwhelmingly support jurisdiction." Lane, 112 Wash.2d at 474, 771 P.2d 1150. The only way to give these words meaning is to interpret them as creating yet a third burden in addition to the burdens of production and persuasion; viz., the burden of contesting. The first two burdens are on the State, but the defense must share in the third. Otherwise, a jurisdictional fact would never be contested. To the same effect is WPIC 4.20 which recognizes that "the State has the burden of proving beyond a reasonable doubt at trial that jurisdiction does in fact rest with Washington courts," but only "if the facts on which jurisdiction is based are in dispute." WPIC 4.20, Introduction.
It is important to distinguish the line of cases which rely on presumptions. "[A] court of general jurisdiction proceeding within the scope of its powers will be presumed to have jurisdiction to give the judgments and decrees it renders until the contrary appears." State v. Lillie, 172 Or. 194, 139 P.2d 576, 581 (1943); 22 C.J.S. Criminal Law § 174 (1989). This premise has been applied to cases involving Indian prosecutions. See generally State v. St. Francis, 151 Vt. 384, 563 A.2d 249, 252-53 (1989) and authorities cited therein; see also State v. Williams, 13 Wash. 335, 338, 43 P. 15 (1895).[5] Such authority *1125 is inapposite because whether a court is "proceeding within the scope of its powers" begs the question of territorial jurisdiction. More importantly, a prima facie presumption of jurisdiction is wholly incompatible with Lane and Svenson.
Other cases rely on narrower statutory presumptions. Under Indiana law, for example, when a murder victim's body is found in the state, a presumption arises that the victim died in the state. McKinney, 553 N.E.2d at 862. If either death or injury later resulting in death occurs within the state, Indiana has jurisdiction. McKinney, 553 N.E.2d at 862. With the presumption in place, jurisdiction is likewise presumed and the defense has "the burden of going forward with disputive evidence." McKinney, 553 N.E.2d at 863. A decision in the same vein is State v. Smith, 124 Idaho 671, 862 P.2d 1093 (Ct.App.1993). These authorities are mentioned only in passing because the statutes in this case do not raise a presumption of jurisdiction. There is no presumption in RCW 37.12 that reservation land is or is not held in fee. It is purely an issue of fact with the burdens of production and persuasion on the State. If the burden is on the State, it follows the defense has no burden in a technical sense. There is the "burden of contesting" if the accused wishes to raise a jury question. By not contesting, the accused takes the risk the court will find the uncontested facts overwhelmingly support jurisdiction and rule as a matter of law. Lane, 112 Wash.2d at 474, 771 P.2d 1150.
The offense took place at a specified address in east Omak within the boundaries of the Colville reservation. Omak is located in Okanogan County which in turn is located in Washington State. Whether this is fee property is neither a contested nor uncontested fact. It is not a fact at all because it comes from inadmissible hearsay. The uncontested facts do not overwhelmingly support jurisdiction. They do not support jurisdiction at all because they merely frame the issue without tending to resolve it one way or the other.
The net result is that the trial court did not err in declining to give L.M.'s proposed instruction because it misstates the relevant inquiry. It would have been error to refuse to instruct the jury had a genuine factual dispute existed. It was error for the trial court to rule as a matter of law that jurisdiction existed because the uncontested facts did not overwhelmingly support jurisdiction.
The remaining issue is the remedy. L.M. contends that when reversal is required because of a failure of proof, double jeopardy principles bar retrial. Burks v. United States, 437 U.S. 1, 10-11, 98 S.Ct. 2141, 2146-47, 57 L.Ed.2d 1 (1978); State v. Stanton, 68 Wash.App. 855, 867, 845 P.2d 1365 (1993). There is but scant authority addressing the applicability of Burks to jurisdictional failures of proof. When a jurisdictional fact is concurrently an element of the substantive offense, Burks applies. See United States v. Schultz, 17 F.3d 723, 728 (5th Cir.1994). However, other courts have allowed retrial when reversal is based on the trial court's failure to allow jurisdictional testimony to be presented to the jury. McKinney, 553 N.E.2d at 863-66 (no discussion of double jeopardy). Here, reversal is required for lack of evidence supporting jurisdiction. The question is whether we should consider only the lack of evidence, or look to the reason for the lack of evidence, which is that the trial court declined to interrupt trial to hear evidence. "I would think that it would be most appropriate to hear from experts or people directly from the tribal land office, but I am denying the State the opportunity to do that because I am not going to interrupt the trial at this time." L.M. met his "burden of contesting" prior to the case being submitted to the jury. Given the simplicity of the issue and the ready availability of evidence establishing whether the land was held in fee, no reason appears why trial could not have been continued an extra day to present that evidence.
Reversed and the charge is dismissed.
THOMPSON, C.J., and MUNSON, J., concur.
NOTES
[1] Pub.L. No. 280, 67 Stat. 588 (1953) (codified as amended at 18 U.S.C. § 1162, 25 U.S.C. §§ 1321-1326, 28 U.S.C. § 1360).
[2] Technically, for purposes of RCW 37.12, the "Colville reservation" means only those lands within the reservation boundaries which are owned by the tribe, held in trust, or otherwise subject to restrictions against alienation imposed by the federal government. RCW 37.12.110. Throughout this opinion, the term "reservation" is used in its broader sense to mean all land located within the boundaries of the reservation without regard for its status.
[3] The court advised defense counsel that "You have had this issue. You had an opportunity to present it anytime you wanted to. You chose to take the risk and not present it pretrial when you should have presented it."
[4] The court stated "If the Court had even the slightest doubt or there was the slightest shred of evidence or question, as reluctant as I am, I would continue the matter to hear this evidence and bring the jury back. But since there is no such evidence, the motion to dismiss is denied." The court later stated "I would think that it would be most appropriate to hear from experts or people directly from the tribal land office, but I am denying the State the opportunity to do that because I am not going to interrupt the trial at this time. Once again, if there was a scintilla of indication that there was not jurisdiction and that this address was not fee property, I would want to hear further evidence on that."
[5] Williams, 13 Wash. at 338, 43 P. 15, stated, "`Prima facie, all persons within the state are subject to its criminal law, and within the jurisdiction of its courts; if any exception exists, it must be shown.' State v. Tachanata, 64 N.C. 614." This is inconsistent with Lane. Williams has not often been cited, and never again for its burden-of-proof commentary. Williams has since been characterized as largely dicta. State v. Howard, 33 Wash. 250, 258-59, 74 P. 382 (1903). It should be noted that Williams addressed a pleading problem, not a proof problem. The evidence at trial established the offense occurred off the reservation where the State unquestionably had jurisdiction. Williams, 13 Wash. at 339, 43 P. 15. The only issue was whether the State was required to allege in the charging document that the offense occurred off the reservation and the court held this unnecessary. Williams, 13 Wash. at 339, 43 P. 15.