# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  52656-5-II |
| Respondent, | |
| v. | |
| KURT RYAN KILLIAN, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J.  —  Kurt R. Killian appeals his conviction for felony violation of a domestic violence postconviction no-contact order.  Killian argues that (1) the trial court erred when it denied his motion to dismiss and granted the State's motion to reopen its case in chief to present evidence of an agreed stipulation to Killian's prior convictions, (2) the trial court denied his request to swear an oath on a Bible, which violated his constitutional right to free exercise of religion, (3) the prosecutor committed prejudicial misconduct during his opening statement by repeatedly expressing his personal opinion as to Killian's guilt, (4) insufficient evidence supports his conviction because the State did not prove that he knowingly violated the no-contact order, (5) he received ineffective assistance of counsel because his counsel failed to investigate Killian's mental illness and raise diminished capacity as a mitigating circumstance at sentencing, and (6) even if

each error raised on appeal is insufficient for reversal, their cumulative effect denied him a fair trial. Killian also filed a statement of additional grounds (SAG).

We hold that (1) the trial court properly granted the State's motion to reopen its case in chief, (2) the trial court did not deny his request to swear his oath on a Bible, (3) the prosecutor did not commit prejudicial misconduct during his opening statement that warrants reversal, (4) sufficient evidence supports Killian's conviction, (5) the record is insufficient to review Killian's ineffective assistance of counsel claim, (6) Killian received a fair trial, and (7) the claims raised in Killian's SAG do not warrant review. Accordingly, we affirm.

FACTS

Killian and Christine Wilson were in a romantic relationship from 2013 to 2017 and share one child together. On April 25, 2017, the Pierce County District Court issued a domestic violence no-contact order restraining Killian from having any contact with Wilson. The order barred Killian from knowingly entering or remaining within 500 feet of Wilson's residence. The order remained in effect until April 25, 2019.

On July 28, 2018, Wilson stepped outside of her mobile home and saw Killian standing on her front steps. Killian had opened Wilson's gate and was standing on the second step of a set of stairs leading to Wilson's front door. Wilson told Killian that he could not be there and that he had to leave. Killian said he wanted to tell Wilson something and that "it was expired." 2 Verbatim Report of Proceedings (VRP) at 56. Wilson went to her neighbor's mobile home and called the police.

Wilson previously told Killian that she lived in Brookdale Mobile Home Park, but she did not tell him which mobile home she lived in. On the day in question, Wilson's son's car was parked near her home. Killian is familiar with Wilson's son's car.

Killian was arrested at a nearby park for violation of the no-contact order. Killian told the arresting officer that he was on his way to see his daughter at her workplace, which was located near Wilson's residence. Killian said that when he was walking, he saw Wilson standing on her front porch. Killian told the officer that he did not speak to Wilson, but Wilson told him that she would be back and went back inside her home. Killian said he left immediately. Killian's path of travel from Wilson's home to the park was not in the direction of his daughter's workplace.

The State charged Killian with one count of felony violation of domestic violence postconviction no-contact order. The charge was a felony because Killian has two prior convictions for violating no-contact orders. The matter proceeded to trial at which the witnesses testified consistently with the facts above. Before trial, the parties stipulated to Killian's two prior convictions for violating no-contact orders. The stipulation read,

> On July 28, 2018, beyond a reasonable doubt, the defendant had two previous convictions for violating court orders issued under Revised Code of Washington, Chapters 10.99 or 26.50. Christine Wilson was not the subject in the two previous orders.

Clerk's Papers (CP) at 73.

During the State's opening statement, the State summarized the case by walking the jurors through the evidence it intended to present at trial. Following the State's summary, the State made the following remarks without objection from defense counsel:

> Ladies and gentlemen, this is going to be a very straightforward case. . . . A crime has been committed.

3

> At the end of the State's case, . . . the State will ask you to find the defendant guilty of violating a domestic violence restraining order. I believe that the only answer is the defendant is guilty. Thank you.

VRP (Oct. 31, 2018) at 17.

After the State rested its case, Killian moved to dismiss the charge because the State did not introduce the parties' stipulation, therefore the State did not prove an essential element of a felony violation of a no-contact order. The State moved to reopen its case in chief in order for the court to read the parties' stipulation to the jury. When the court asked defense counsel what prejudice Killian would suffer if the court allowed the State to reopen its case to have the stipulation read to the jury, defense counsel responded simply that "[t]he trial continues" as opposed to the case being dismissed. 2 VRP at 140. The court denied Killian's motion to dismiss and granted the State's motion to reopen its case, concluding that reopening the case would not cause Killian any prejudice. The court then read the stipulation to the jury.

Killian testified. Before Killian took the witness stand, he requested that he be sworn in by placing his hand on a Bible. Killian stated that without a Bible, "[i]t would be a hollow oath to me." 3 VRP at 150. The court granted his request, but stated that the court did not have a Bible. Killian also did not have a Bible because he was not permitted to take his Bible from jail to court with him that morning. Killian's counsel asked the court for 10 minutes to search the court's law library for a Bible, and the court granted his request. When Killian's counsel returned, the following colloquy occurred:

> [Defense Counsel]: Your Honor, I could not locate a Bible. Just for the record, the Law Library does not maintain a Bible. I have explained that to my client. We are ready to proceed with the swearing in as normal. We would like the court to use the oath language rather than affirmation language. . . .
> . . . .

[Killian] would prefer the "swear" -- he is not affirming. He wants the -- see, it can be given in that alternative. If someone doesn't want to swear under the penalty of perjuage, it's the affirmation. He wants the swearing language, not the affirmation language, if that makes sense.

. . . .

THE COURT: . . . [P]ersonally, I don't have a problem with it. What I'm concerned about is, . . .

If I say that Mr. Killian has to swear and not affirm, when I have done that to all of the other witnesses, it may appear to the jury that I'm singling him out in some way and that may strike some of the jurors as a comment by me on Mr. Killian's truthfulness. . . .

[Defense Counsel]: I understand, Your Honor. I don't want to complicate something that we are so close to finishing up. I will defer to the court.

. . . .

THE COURT: I'm afraid of biasing against Mr. Killian, if I do that. That is my concern. Later on in an appeal, if he should be convicted, then that is something else that is fodder there.

. . . .

[Defense Counsel]: I agree with the court. I would ask the court to swear Mr. Killian no different than any other previous witnesses.

*Id.* at 153-55.

Killian was then sworn in. Killian testified that in October 2017, he called his daughter and she told him that Wilson was deceased. Sometime after this phone call, Killian's sister called him and told him that his daughter lied and Wilson is not deceased. Killian testified that he believed his daughter's story because his daughter "works a quarter of a mile away from [Wilson's] house." *Id.* at 164.

Killian stated that on the day in question, he was in the area near Wilson's residence because he was walking to his daughter's workplace. While walking, he heard Wilson's voice behind him. He turned around, saw Wilson, and told her that he was leaving. According to Killian, Wilson told Killian to "'[w]ait right here,'" but Killian continued and walked to a nearby park to wait for the police. *Id.* at 172. Killian denied any knowledge of where Wilson lived. He also denied approaching Wilson's mobile home or entering the gate outside of Wilson's home.

After the defense rested, the court instructed the jurors that the lawyer's statements are not evidence and any remark not supported by the evidence must be disregarded. The jury found Killian guilty of felony violation of a domestic violence no-contact order. The jury also found that Killian and Wilson were members of the same household.

At sentencing, Killian's counsel asked the court to impose an exceptional sentence below the standard range because based on the facts presented at trial, it appeared that Killian was not stalking or seeking out Wilson and the crime did not involve any threats or physical violence. Killian's offender score was 24 and his mandatory sentence was 60 months, the top of the sentencing range. Killian acknowledged that he was not basing his request for a downward departure on any of the enumerated mitigating factors in RCW 9.94A.535(1).

Killian's sister and brother addressed the court at the sentencing hearing. Both siblings stated that Killian suffers from a diagnosed mental illness. His brother stated that Killian sees demons, and when he is not taking his medication, Killian believes the demons are real. He stated that Killian's ability to recognize reality when he is on his medication changes drastically. Both siblings stated that the week of the incident, Killian was released from jail without his medication and without any resources.

Following his siblings' statements, the court asked Killian if there was anything he would like to add. Killian stated, "I asked about mental health court, and I just have a hard time making a decision. Even when I'm on my medication, any plea agreements -- I couldn't weigh them out." 5 VRP at 249.

The court considered Killian's siblings' statements, but noted that Killian "behaved completely appropriately" throughout trial. *Id.* The court sentenced Killian within the standard range because "there is no real basis for me to deviate downward." *Id.* at 252.

Killian appeals his judgment and sentence.

## DISCUSSION

### I. MOTION TO REOPEN

Killian argues that the trial court erred by denying his motion to dismiss and by granting the State's motion to reopen its case in chief in order to allow the State to introduce the stipulation of Killian's prior convictions. The State argues that the trial court properly reopened the State's case because Killian had already agreed to the admissibility of the stipulation, and Killian fails to demonstrate that he suffered prejudice from the trial court's ruling. We agree with the State.

A motion to reopen a case to present further evidence is a matter within the discretion of the trial court. *State v. Luvene*, 127 Wn.2d 690, 711, 903 P.2d 960 (1995) (quoting *State v. Sanchez*, 60 Wn. App. 687, 696, 806 P.2d 782 (1991)). We uphold a trial court's ruling unless the complaining party can show a manifest abuse of discretion and that it suffered prejudice. *State v. Brinkley*, 66 Wn. App. 844, 848, 837 P.2d 20 (1992). Factors to consider to determine whether the court abused its discretion when reopening the State's case include (1) whether rebuttal witnesses have been dismissed, (2) whether the State deliberately waited until the last moment to present evidence, (3) whether the complaining party suffered more than if the evidence had been presented properly, and (4) whether the complaining party has an adequate opportunity to rebut the additional evidence. *Id*. at 850.

It is well established that a trial court may allow the State to reopen its case to present additional evidence after the defense has moved for dismissal based on insufficient evidence. *Id.* at 848 (citing *In re Estes v. Hopp*, 73 Wn.2d 263, 264-65, 438 P.2d 205 (1968); *State v. Vickers*, 18 Wn. App. 111, 113, 567 P.2d 675 (1977); *City of Seattle v. Heath*, 10 Wn. App. 949, 953, 520 P.2d 1392 (1973)). Therefore, the trial court does not per se abuse its discretion by allowing the prosecution "to present additional evidence to resolve deficiencies in its case pointed out by the defendant." *Id.*

Here, Killian concedes that three of the four factors set forth in *Brinkley* do not weigh in his favor. Killian argues that the trial court abused its discretion by granting the State's motion to reopen its case because the presentation of the stipulation immediately prior to Killian's testimony placed undue emphasis on his prior convictions. Killian argues that this caused him prejudice because it undermined his credibility and placed him at an unfair disadvantage.

Killian stipulated to the presentation of evidence during the State's case in chief. The record does not indicate that the State made a calculated decision to hold the stipulation back or that the State willfully withheld the stipulation in order to place Killian at a disadvantage. Further, Killian does not point to any evidence in the record that shows that the impact of the court reading the stipulation regarding his prior convictions was intensified due to the timing of its presentation. Because Killian had already stipulated to the presentation of his prior convictions in the State's case in chief and the record is devoid of any disadvantage suffered by Killian due to the timing of its presentation, we hold that the trial court did not abuse its discretion when denying Killian's motion to dismiss and granting the State's motion to reopen its case in chief.

## II. THE FREE EXERCISE OF RELIGION

Killian argues that the trial court denied Killian's requests to swear an oath on a Bible and "in the manner of his choice," which violated his constitutional right to free exercise of religion. Br. of Appellant at 13 (capitalization and bold omitted). The State contends that Killian mischaracterizes the record because the trial court permitted Killian to swear an oath on the Bible and in his preferred manner. We hold that the trial court neither denied nor failed to accommodate Killian's request to swear his oath on a Bible and in a manner of his choice before testifying and therefore did not deny Killian his right to free exercise of his religion. We further hold that because Killian withdrew his requests, Killian's claim is barred because Killian waived any error.

Killian's first claim of error is that the court refused to accommodate Killian's request to swear his testimonial oath on a Bible. Killian takes significant liberty with the record in support of his claim. In response to his request to swear his oath on a Bible, the trial court granted the request. However, the trial court did not have a Bible in the courtroom. Killian claims that "[t]he judge gave Mr. Killian's attorney ten minutes to find a Bible in the courthouse law library. . . . When the attorney could not locate a Bible, the trial court pressed on with proceedings." Br. of Appellant at 18. This is largely a misrepresentation of the record.

It was defense counsel who specifically suggested he be given 10 minutes to go look for a Bible, and the trial court accommodated this request. When a Bible could not be located in the law library, it was defense counsel who suggested the court proceed without one. Upon returning from his search for a Bible, defense counsel said, "Your Honor, I could not locate a Bible. Just for the record, the Law Library does not maintain a Bible. I have explained that to my client. *We*

9

*are ready to proceed with the swearing in as normal*." 3 VRP at 153 (emphasis added). Killian plainly abandoned his request to procure a Bible.

Still, Killian argues in his brief that "[g]etting a Bible for Mr. Killian would likely take an hour" or, "[a]t the very most, proceedings would have been delayed a day so that Mr. Killian could bring his Bible from jail." Br. of Appellant at 19. But defense counsel never asked the trial court for such an accommodation. Further, there is nothing in the record to suggest counsel could not have asked for a longer period of time to locate a Bible or that upon failing to find a Bible, counsel could not have asked for more time or, perhaps, a short recess. It is incorrect to imply, by stating the trial court "pressed on" with the proceedings, that the trial court had in some way indicated it would not make further accommodation. *Id.* at 18. The accommodation that Killian requested was precisely the accommodation he received, and any suggestion otherwise lacks merit.

Even if an issue of constitutional magnitude may be raised for the first time on appeal, that right may be waived or abandoned by withdrawing one's request. *State v. Massey*, 60 Wn. App. 131, 139, 803 P.2d 340 (1990) (challenge to an investigative stop was deemed waived or abandoned where the record did not indicate that the motion to exclude evidence was pursued); *State v. Valladares*, 31 Wn. App. 63, 75-76, 639 P.2d 813 (1982) (challenge to a warrantless search was deemed waived or abandoned where motion to suppress was withdrawn), *aff'd in part, rev'd in part*, 99 Wn.2d 663, 664 P.2d 508 (1983). Killian waived his claim that the trial court either denied his request to swear his oath on a Bible or failed to accommodate him in his search for a Bible.

Killian's second claim of error is that the trial court refused his request to swear his oath "in the manner of his choice." Br. of Appellant at 13 (capitalization and bold omitted). Again, Killian misrepresents the record. Killian's counsel said to the court that

> [h]e would prefer the "swear" -- he is not affirming. He wants the -- see, it can be given in that alternative. If someone doesn't want to swear under the penalty of perjury, it's the affirmation. He wants the swearing language, not the affirmation language, if that makes sense.

3 VRP at 153.

In response to Killian's request, the trial court expressed its concern that because it had sworn in the other witnesses by asking if they "swear or affirm" it might look to the jury as though it was requiring something special of Killian, which in turn might be taken as a comment on Killian's truthfulness. *Id.* at 154. The trial court did *not* deny Killian's request. Rather, upon expressing this concern, defense counsel immediately withdrew his request for a different oath and said, "I understand, Your Honor. I don't want to complicate something that we are so close to finishing up. . . . You can give the language as any other witness." *Id*. After a few more remarks by the trial court explaining that it fully respected Killian's position but did not want to do anything to prejudice Killian's right to a fair trial, defense counsel said, "I agree with the court. I would ask the court to swear in Mr. Killian no different than any other previous witnesses." *Id.* at 155. Again, Killian withdrew his request, therefore he waived any claim of error. *Massey*, 60 Wn. App. at 139; *Valladares*, 31 Wn. App. at 75-76.

We hold that the trial court neither denied nor failed to accommodate Killian's request to swear his oath on a Bible and in a manner of his choice because Killian withdrew his requests. Consequently, we decline to address Killian's free exercise of religion argument as his claim is waived.

11

## III. PROSECUTORIAL MISCONDUCT

Killian argues that the prosecutor committed prejudicial misconduct by repeatedly stating his personal opinion about Killian's guilt during his opening statement. The State contends that Killian waived his ability to raise this claim because he failed to object at trial, and even so, the prosecutor did not commit misconduct because he reasonably commented on what the State intended its evidence to show. The State also argues that Killian cannot show that the potential prejudice could not have been obviated by a curative instruction. We conclude that the prosecutor improperly expressed his personal opinion on Killian's guilt on one occasion, but agree with the State and hold that any prejudice could have been obviated by a curative instruction.

### A. LEGAL PRINCIPLES

In a prosecutorial misconduct claim, the defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial. *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008). We review the prosecutor's conduct and whether prejudice resulted therefrom "in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury." *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

Because Killian failed to object at trial, his claim is waived on appeal unless the misconduct was so flagrant and ill intentioned that it evinces an enduring prejudice the trial court could not have cured by an instruction. *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994). Killian must show that (1) a curative instruction would not have obviated any prejudicial effect on the jury and (2) there is a substantial likelihood that the misconduct affected the jury's verdict. *State v.*

*Scherf*, 192 Wn.2d 350, 398, 429 P.3d 776 (2018) (quoting *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012)).

B. PREJUDICE

The State said the following during opening statement:

> Ladies and gentlemen, this is going to be a very straightforward case. . . . *A crime has been committed*.
> At the end of the State's case, . . . the State will ask you to find the defendant guilty of violating a domestic violence restraining order. *I believe that the only answer is the defendant is guilty*.

VRP (Oct. 31, 2018) at 17 (emphasis added). Killian's counsel did not object.

Killian contends that the prosecutor improperly expressed his personal opinion during his opening statement when he said that "'a crime has been committed'" and "'I believe that the only answer is the defendant is guilty.'" Br. of Appellant at 20 (quoting VRP (Oct. 31, 2018) at 17). The State contends that the prosecutor did not commit misconduct because he reasonably commented on what the State intended its evidence to show.

The prosecution should confine opening statements "to a brief statement of the issues of the case, an outline of the anticipated material evidence, and reasonable inferences to be drawn therefrom." *State v. Campbell*, 103 Wn.2d 1, 16, 691 P.2d 929 (1984). In presenting this statement, a prosecutor must avoid argumentative and inflammatory remarks, as well as expressions of personal belief. *State v. Torres*, 16 Wn. App. 254, 258, 554 P.2d 1069 (1976). Rather, the prosecutor has a duty "'to seek a verdict free of prejudice and based on reason.'" *State v. Echevarria*, 71 Wn. App. 595, 598, 860 P.2d 420 (1993) (quoting *State v. Huson*, 73 Wn.2d 660, 663, 440 P.2d 192 (1968)).

The prosecutor's statement that "[a] crime has been committed" was offered as a reasonable inference from the evidence the State anticipated presenting. VRP (Oct. 31, 2018) at 17. The remark was made immediately prior to the prosecutor's brief statement of the case, including an outline of what the State expected its evidence to show. Furthermore, we have previously stated that it is not misconduct for a prosecutor to state that "'the defendant is guilty'" in an opening statement. *Torres*, 16 Wn. App. at 256 (internal quotation marks omitted) (quoting *State v. O'Donnell*, 191 Wash. 511, 71 P.2d 571 (1937)).

In contrast, the prosecutor's statement that "'I believe that the only answer is the defendant is guilty'" is an impermissible personal opinion of guilt. Br. of Appellant at 20; *Torres*, 16 Wn. App. at 258. His personal opinion was unnecessary to an outline of anticipated evidence and did not constitute a reasonable inference drawn therefrom. However, even assuming this statement was improper, Killian has not established that he was prejudiced. Given the context in which the statement was made, there is no indication that the statement was inflammatory or made to elicit an emotional response that caused an enduring prejudice throughout trial. *See Brown*, 132 Wn.2d at 563. Moreover, the prosecutor made the statement at the outset of a multiple-day trial. Thus, the statement likely had little to no effect on the jury's verdict.

The court instructed the jurors that the lawyer's statements are not evidence and they must disregard any remark not supported by the evidence, which was sufficient to obviate any prejudicial effect. We hold that the prosecutor did not repeatedly state his personal opinion on Killian's guilt, and the prosecutor's one remark regarding his personal opinion of guilt during opening statement did not result in prejudice that requires a new trial.

#### IV. INSUFFICIENT EVIDENCE

Killian argues that insufficient evidence supports his conviction because the State failed to prove beyond a reasonable doubt that Killian knowingly or willfully violated the no-contact order. We disagree.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). In a sufficiency of the evidence claim, the defendant admits the truth of the evidence and the court views the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the State. *Id*. at 265-66. Credibility determinations are made by the trier of fact and are not subject to review. *Id*. at 266. Circumstantial and direct evidence are equally reliable. *Id*.

Killian was charged under former RCW 26.50.110 (2017) with knowingly violating a domestic violence no-contact order.[1] The no-contact order was issued under chapter 10.99 RCW. The parties agree that the sole issue at trial was whether Killian knowingly violated the no-contact order. In order to secure a conviction under former RCW 26.50.110, the State must prove a "[w]illful violation" of a protection order. RCW 10.99.050(2)(a). To act willfully means to act "knowingly with respect to the material elements of the offense." RCW 9A.08.010(4). The restrained party does not violate a no-contact order if the party accidentally or inadvertently

---

[1] Killian was charged under former RCW 26.50.110(5), which states that any violation of a protection order under former RCW 26.50.110 is a class C felony if the offender has two previous convictions for violating a protection order also issued pursuant to former RCW 26.50.110. Killian does not dispute that he has two previous convictions for violating a protection order under former RCW 26.50.110.

contacts the subject of the order and immediately breaks off the contact. *State v. Sisemore*, 114 Wn. App. 75, 78, 55 P.3d 1178 (2002).

Killian argues that there is insufficient evidence to support a finding that he knowingly violated the no-contact order because the evidence established that his contact was accidental and he immediately broke off the contact. However, taking the evidence in the light most favorable to the State, a rational trier of fact could have found Killian knowingly violated the no-contact order.

The no-contact order restrained Killian from knowingly entering, remaining, or coming within 500 feet of Wilson's residence. While Killian may have been walking on the street where Wilson's home was located for an innocent purpose, the State presented evidence that Killian knew which mobile home belonged to Wilson and intentionally entered the area around her home in violation of the no-contact order. Wilson testified that she told Killian what mobile home park she lived in, and on the day in question a car familiar to Killian was parked near her home. Thus, one could make a reasonable inference that Killian presumed that the home was Wilson's and still proceeded to her front door. The evidence established that Killian entered the gate located near Wilson's front door and began climbing the stairs leading to her front door, well within 500 feet of Wilson's home.

Moreover, even if Killian's contact with Wilson was inadvertent, the State presented evidence that Killian did not immediately break it off. Instead, Wilson testified that she told Killian that he had to leave, but Killian said that he wanted to tell her something and inferred that the no-contact order had expired.

Viewing this evidence in the light most favorable to the State, we hold that the evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that Killian knowingly

violated the no-contact order. Accordingly, we hold that there was sufficient evidence to support Killian's conviction.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Killian argues that he received ineffective assistance of counsel because his counsel did not investigate his mental illness or raise his mental capacity as a mitigating factor at sentencing. The State argues that we should not consider Killian's argument due to an insufficient record on appeal. We agree with the State.

The reviewing court will not consider matters outside the record on direct appeal. *State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018). Issues that require consideration of evidence or facts not in the trial record are more properly the subject of a personal restraint petition. *Id.*; *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).

Killian argues that his counsel performed deficiently because any reasonable attorney would have investigated his mental illness and raised diminished capacity as a mitigating factor at sentencing. Killian points to his siblings' statements at the sentencing hearing. Both siblings stated that Killian suffers from a diagnosed mental illness that impacts his ability to recognize reality and that he was not taking his medication when the incident in question occurred. However, following his siblings' statements at the sentencing hearing, Killian expressed to the court that he had inquired about "mental health court," but told the court that "I just have a hard time making a decision. Even when I'm on my medication, any plea agreements -- I couldn't weigh them out." 5 VRP at 249.

Here, the only evidence in the record pertaining to Killian's mental health is his siblings' statements and Killian's statement regarding mental health court at the sentencing hearing.

Killian's own comments suggest that his counsel did investigate Killian's mental health and presented Killian with a plea agreement that involved mental health services. However, as the State points out, the record on appeal does not make clear what investigation Killian's counsel may have conducted pertaining to Killian's mental illness. Thus, we cannot determine from the record whether and to what degree counsel actually explored raising a claim pertaining to Killian's mental health as a mitigating circumstance at sentencing. *See Linville*, 191 Wn.2d at 525.

Without more information regarding Killian's mental illness, we are not in a position to analyze this claim. As this matter is beyond the record, we do not address it on appeal. If additional evidence exists supporting this claim, then Killian may produce that evidence in a personal restraint petition. *See McFarland*, 127 Wn.2d at 338.

## VI. CUMULATIVE ERROR

Killian argues that even if this court determines that each error he raises on appeal is not sufficient for reversal, their cumulative effect denied him a fair trial. The State argues that Killian cannot show cumulative error because Killian cannot show that any error occurred. We conclude that there was no cumulative error.

A defendant may be entitled to a new trial when cumulative errors produce a fundamentally unfair trial. *Emery*, 174 Wn.2d at 766. As we discussed above, Killian was affected by only one error, and he failed to demonstrate the requisite prejudice. Therefore, the cumulative error doctrine does not apply and Killian is not entitled to a new trial.

## VII. SAG

Killian argues that (1) his counsel rendered ineffective assistance during trial for failing to present certain evidence and (2) a bias juror was empaneled on the jury.

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Killian argues he received ineffective assistance of counsel because his counsel (1) did not call his daughter as a witness and (2) failed to introduce evidence of his phone calls to his daughter and a bank manager.

There is a strong presumption of effective assistance, and Killian bears the burden of demonstrating the absence of a legitimate strategic or tactical reason for the challenged conduct. *McFarland*, 127 Wn.2d at 336. Defense counsel's reasoning for not calling this witness or attempting to introduce this evidence is not contained within our record. Thus, we cannot conclude that counsel lacked a legitimate tactical reason for not doing so. As noted above, the reviewing court will not consider matters outside the record on direct appeal. *Linville*, 191 Wn.2d at 525. Accordingly, we reject his claims.

### B. VOIR DIRE

Killian states that during voir dire, one juror was a retired jail maintenance employee and many jurors were married or related to judges, police officers, correction officers, and probation officers. Killian also states that during voir dire, one juror said that she is a domestic violence victim and she didn't know if she could be impartial. Killian does not argue that his counsel should have challenged the jurors or that he was prejudiced by the jurors; Killian's argument implies these jurors should have been dismissed.

The record indicates one juror experienced domestic violence and two jurors had friends who experienced domestic violence. The potential juror that experienced domestic violence first hand was not empaneled. One of the two jurors that stated that her friend was a victim of domestic violence was empaneled. During voir dire, the juror stated that due to the experience, she was unsure if she could be impartial and unbiased. However, after further inquiry by the court and defense counsel, the juror stated on multiple occasions that she would do her best to fairly apply the law to the facts. Killian did not challenge the juror.

Under RAP 2.5(a), we generally do not entertain issues not raised in the trial court unless a party can establish a "manifest error affecting a constitutional right." RAP 2.5(a)(3). The record is insufficient to determine the merits of Killian's claim; we cannot determine whether error occurred in the first instance, let alone whether it was manifest. We decline to review this claim. *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007).

CONCLUSION

We hold that the trial court properly allowed the State to reopen its case to allow the introduction of the prior conviction stipulation, and Killian waived his claim that the trial court violated his right to free exercise of religion. We also hold that the prosecutor committed misconduct during his opening statement by expressing a personal opinion of guilt, but that a curative instruction could have neutralized any prejudice. We hold that the State presented sufficient evidence to show that Killian knowingly or willfully violated the no-contact order and that the record is insufficient to review Killian's ineffective assistance of counsel claim. Last, we

hold that Killian is not entitled to relief under the cumulative error doctrine and we decline to review the claims made in the SAG. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, P.J.

SUTTON, J.